## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN MEDICAL ASSOCIATION, MEDICAL SOCIETY OF NEW JERSEY, and WASHINGTON STATE MEDICAL ASSOCIATION, each in an associational capacity on behalf of its members, JILL STEWART, MARIA C. PLUMACHER, and JORGE CARDONA (as Attorney-in-Fact and representative of Lady Montoya Marin), individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.:  3:22-cv-00769-OAW |
| v. | October 26, 2022 |
| CIGNA CORPORATION and CIGNA HEALTH AND LIFE INSURANCE COMPANY, | |
| Defendants. | |

## CIGNA'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ...................................................................................4

LEGAL STANDARD ...........................................................................10

ARGUMENT .......................................................................................11

I.   MEMBER PLAINTIFFS' ERISA CLAIMS (COUNTS I-III) SHOULD BE DISMISSED............................................................................... 11

    A.   Member Plaintiffs' ERISA § 502(a)(1)(B) Benefits Claim Should Be Dismissed...........................................................................11

        1.   Cigna's MultiPlan Contract Makes Clear MultiPlan Providers Are Neither In-Network nor Entitled to Payment at Their MultiPlan Rates....................................................................12

        2.   Member Plaintiffs' Plans Also Do Not Require Treating MultiPlan Providers as In-Network or Paying MultiPlan Contract Rates. ..................13

    B.   Member Plaintiffs' Alternative Claims for Breach of Fiduciary Duty Also Fail. ..................................................................................15

    C.   Member Plaintiffs Lack Standing To Seek Equitable or Prospective Relief.........18

    D.   Cigna Corporation Is Not a Proper Defendant......................................19

II.  ASSOCIATION PLAINTIFFS' CLAIMS (COUNTS IV-VII) SHOULD BE DISMISSED............................................................................... 20

    A.   Association Plaintiffs Do Not Have Standing and Their Claims Should Be Dismissed...........................................................................20

        1.   Association Plaintiffs Fail to Allege That Their Members Have Standing To Pursue Future Injunctive, Declaratory, and Equitable Relief.............................................................21

        2.   Association Plaintiffs' Claims and Requested Relief Require the Participation of Their Members. ...............................................23

    B.   Association Plaintiffs' Claims Should Be Dismissed for Failure To State a Claim.....................................................................................27

        1.   Association Plaintiffs' Negligent Misrepresentation Claim (Count IV) Should Be Dismissed......................................................28

2.      Association Plaintiffs' Tortious Interference Claim (Count V) Should Be Dismissed. ...............................................................33

3.      Association Plaintiffs' Promissory Estoppel Claim (Count VI) Should Be Dismissed. ...............................................................35

4.      The AMA's and WSMA's Claim for Violation of the Washington Consumer Protection Act (Count VII) Should Be Dismissed. .................37

**CONCLUSION** .........................................................................................................**38**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernethy v. EmblemHealth, Inc.*,
  790 F. App'x 250 (2d Cir. 2019) .........................................................................12

*Advanced Oral Techs., L.L.C. v. Nutrex Rsch., Inc.*,
  2011 WL 1080204 (D.N.J. Mar. 21, 2011)...........................................................33

*Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*,
  129 F. Supp. 3d 160 (E.D. Pa. 2015), *aff'd in part, vacated in part, remanded*,
  703 F. App'x 126 (3d Cir. 2017) ..........................................................................31

*Alejandre v. Bull*,
  159 Wash. 2d 674 (Wash. 2007).............................................................................32

*Alexander v. Cigna Corp.*,
  991 F. Supp. 427 (D.N.J. 1998) .....................................................................32, 36

*Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*,
  332 Fed. App'x 787 (3d Cir. 2009).........................................................................34

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)..................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................10

*Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*,
  2022 WL 158658 (S.D.N.Y. Jan. 18, 2022) ...........................................29, 30, 36

*AVH & BJ Holdings 2, LLC v. LaClare Invs., LLC*,
  7 Wash. App. 2d 1066 (2019)................................................................................28

*Bacquie v. Liberty Mut. Ins. Co.*,
  435 F. Supp. 2d 318 (S.D.N.Y. 2006), *aff'd*, 247 F. App'x 296 (2d Cir. 2007).....................11

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004)..................................................................21, 23, 27

*Bast v. Prudential Ins. Co. of Am.*,
  150 F.3d 1003 (9th Cir. 1998) ...............................................................................38

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
  157 F. Supp. 3d 407 (D.N.J. 2016) ........................................................................34

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................10

*Bondholder Comm. on Behalf of Owners of Quad Cities Reg'l Econ. Dev. Auth.
First Mortg. Revenue Bonds Series 2013A v. Sauk Valley Student Hous., LLC*,
2019 WL 1864121 (D.N.J. Apr. 24, 2019) ..............................................................23

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)........................................................................................1

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
572 F.3d 76 (2d Cir. 2009).......................................................................................11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................................................................................................23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)............................................................................................22, 23

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*,
2016 WL 7376847 (D.D.C. Dec. 19, 2016)........................................................24, 26

*Dando v. Bimbo Food Bakeries Distrib., LLC*,
2017 WL 1362022 (D.N.J. Apr. 10, 2017), *reconsideration granted on
different grounds*, 2017 WL 2861650 (D.N.J. July 5, 2017)....................................35

*Delgado v. ILWU-PMA Welfare Plan*,
2018 WL 8014336 (C.D. Cal. Nov. 20, 2018).........................................................19

*Dello Russo v. Nagel*,
358 N.J. Super. 254 (App. Div. 2003) ......................................................................34

*Dickerson v. United Way of N.Y.C.*,
351 F. App'x 506 (2d Cir. 2009) .............................................................................11

*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) .........................................................................................21

*Eberhart v. LG Elecs. USA, Inc.*,
188 F. Supp. 3d 401 (D.N.J. 2016)...........................................................................28

*Est. of Kenyon v. L + M Healthcare Health Reimbursement Acct.*,
404 F. Supp. 3d 627, 633 (D. Conn. 2019)...............................................................20

*Facteon, Inc. v. Comp Care Partners*,
LLC, 2014 WL 6685380 (D.N.J. Nov. 26, 2014)................................................32, 36

*Fay v. Oxford Health Plan*,
    287 F.3d 96 (2d Cir. 2002)...........................................................................................11, 15

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*,
    284 F.3d 575 (5th Cir. 2002) .........................................................................................24, 25

*Gerosa v. Savasta & Co.*,
    329 F.3d 317 (2d Cir. 2003)..................................................................................................18

*Goodman v. Goldman, Sachs & Co.*,
    2010 WL 5186180 (D.N.J. Dec. 14, 2010) ....................................................................30, 32

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778 (Wash. 1986)...........................................................................................38

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013)................................................................................................................11

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)..............................................................................................................21

*Juv. Matters Trial Laws. Ass'n v. Jud. Dep't*,
    363 F. Supp. 2d 239 (D. Conn. 2005)..............................................................................20, 26

*Kelley v. Microsoft Corp.*,
    2011 WL 13353905 (W.D. Wash. May 24, 2011)................................................................25

*Kelley-Ross & Assocs., Inc. v. Express Scripts, Inc.*,
    2022 WL 1908917 (W.D. Wash. June 3, 2022)...............................................................37, 38

*Keodalah v. Allstate Ins. Co.*,
    194 Wash. 2d 339 (Wash. 2019)...........................................................................................37

*Koch v. Mut. of Enumclaw Ins. Co.*,
    108 Wash. App. 500 (Wash. Ct. App. 2001) ........................................................................34

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)...............................................................................................1, 10

*L.I. Minimally Invasive v. MultiPlan*,
    Index No. 605520/2016, Dkt. 187 (NY Sup. Ct. Nassau Cnty. Apr. 24, 2020) ...............13, 31

*Lines v. Hartford Fin. Servs. Grp., Inc.*,
    2022 WL 408820 (D. Conn. Feb. 10, 2022) .....................................................................16, 17

*Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*,
    2022 WL 2358414 (2d Cir. June 30, 2022) .............................................................................1

*Malaker Corp. S'holders Protective Comm. v. First Jersey Nat'l Bank*,
163 N.J. Super. 463 (App. Div. 1978) ............................................................... 35, 36

*Massone on behalf of U.S. Sec. Officers v. Washington*,
2021 WL 3863081 (S.D.N.Y. Aug. 30, 2021) ......................................................... 26

*McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*,
2021 WL 5286647 (2d Cir. Nov. 15, 2021) ............................................................ 10

*Merriam v. Demoulas Super Markets, Inc.*,
2012 WL 931347 (D. Mass. Mar. 20, 2012) ........................................................... 19

*Micro Enhancement Int'l., Inc. v. Coopers & Lybrand, LLP*,
110 Wash. App. 412 (Wash. Ct. App. 2002) ....................................................... 28, 30

*Minerley v. Aetna*, *Inc.*,
2019 WL 2635991 (D.N.J. June 27, 2019), *aff'd*, 801 F. App'x 861 (3d Cir.
2020) ................................................................................................................. 16, 17

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ................................................................................... 31

*N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*,
2021 WL 3419356 (S.D. Fla. May 10, 2021) ........................................................... 15

*Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*,
176 F.R.D. 329 (C.D. Cal. 1997) ............................................................................. 24

*Nechis v. Oxford Health Plans, Inc.*,
421 F.3d 96 (2d Cir. 2005) ...................................................................................... 18

*Noecker v. S. Cal. Lumber Indus. Welfare Fund*,
2011 WL 13147419 (C.D. Cal. Feb. 25, 2011), *aff'd*, 522 F. App'x 411 (9th
Cir. 2013) ..................................................................................................... 15, 16, 17

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
158 Wash. 2d 342 (Wash. 2006) ............................................................................. 34

*Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*,
2018 WL 2441768 (D.N.J. May 31, 2018) .................................................. 29, 30, 32, 33

*Radcliffe v. Aetna, Inc.*,
2021 WL 4477408 (D. Conn. Sept. 30, 2021) .......................................................... 16

*RJR Mech., Inc. v. Vassallo*,
2017 WL 1534192 (D.N.J. Apr. 27, 2017) ............................................................... 33

*Roganti v. Metro. Life Ins. Co.*,
  786 F.3d 201 (2d Cir. 2015)......................................................................13, 17, 18

*Ross v. AXA Equitable Life Ins. Co.*,
  115 F. Supp. 3d 424 (S.D.N.Y. 2015).................................................................22, 23

*Scanlan v. Kodak Ret. Income Plan*,
  678 F. Supp. 2d 110 (W.D.N.Y. 2010) ......................................................................18

*Seattle-First Nat'l Bank v. Crystal & Gold, Ltd.*,
  85 Wash. App. 1084 (Wash. Ct. App. 1997) ........................................................32, 36

*Segal Co. (E. States), Inc. v. Amazon.Com*,
  280 F. Supp. 2d 1229 (W.D. Wash. 2003)..................................................................37

*Sloma v. Wash. State Dep't of Ret. Sys.*,
  12 Wash. App. 2d 602, 622–23, *review denied sub nom. Sloma v. Dep't of
  Ret. Sys.*, 195 Wash. 2d 1028 (2020) ......................................................................35

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
  770 F.3d 1282 (9th Cir. 2014) .................................................................................27

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...............................................................................................20

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).................................................................................................23

*Stolba v. Wells Fargo & Co.*,
  2011 WL 3444078 (D.N.J. Aug. 8, 2011) .................................................................30

*Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*,
  2019 WL 4688803 (W.D. Wash. Sept. 26, 2019).......................................................34

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)...............................................................................................18

*Tacoma Auto Mall, Inc. v. Nissan N.A., Inc.*,
  169 Wash. App. 111 (Ct. App. Wash. 2012) .............................................................36

*Temple Univ. Children's Med. Ctr. v. Grp. Health, Inc.*,
  413 F. Supp. 2d 530 (E.D. Pa. 2006) ......................................................................31

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)...........................................................................................18

*U.S. Bank Nat'l Ass'n v. Fowlkes*,
  2016 WL 392713 (Ch. Div. Jan. 26, 2016)...............................................................35

*United Food & Com. Workers Union Loc.751 v. Brown Grp., Inc.*,
517 U.S. 544 (1996)................................................................................................21

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)................................................................................................17

*Warth v. Seldin*,
422 U.S. 490 (1975)................................................................................................21

*Wessa v. Watermark Paddlesports, Inc.*,
2006 WL 1418906 (W.D. Wash. May 22, 2006)....................................................31

*Westfield Park Homeowners' Ass'n, Inc. v. NVR, Inc.*,
2007 WL 9774486 (N.D. Ohio Mar. 27, 2007) ...............................................24, 27

*Wilson v. McCann*,
2014 WL 5326173 (N.J. Super. Ct. App. Div. Oct. 21, 2014) ...............................28

**Statutes**

29 U.S.C. § 1132(a)(1)(b)...........................................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 12 ..............................................................................1

Federal Rule of Civil Procedure 12(b)(1) .....................................................................3

Federal Rule of Civil Procedure 12(b)(6) ...................................................................10

## PRELIMINARY STATEMENT[1]

The original plaintiffs in this case were three former members of Cigna-serviced health benefit plans ("Member Plaintiffs") who alleged that Cigna violated ERISA based on the mistaken premise that Cigna's contract with a vendor called MultiPlan (the "MultiPlan Contract") required Cigna to treat any healthcare provider that MultiPlan chooses to contract with as an in-network provider with Cigna under the terms of Member Plaintiffs' ERISA plans.

As Cigna showed in its original motion to dismiss, Member Plaintiffs' ERISA claims under this theory all failed.  Far from obligating Cigna to treat MultiPlan-contracted providers as in-network, Cigna's MultiPlan Contract states that MultiPlan's providers "shall ***not*** be considered part of the Company's [*i.e.*, Cigna's] contracted provider network."  (Ex. 1, Cigna-MultiPlan Provider Network Services Contract § 1.1.)[2]  And far from requiring Cigna to use a provider's MultiPlan rates for Cigna plan members' claims, the MultiPlan Contract states that Cigna "shall have the right to pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Claim Price made available by [MultiPlan]."  (*Id.* § 1.1.B.7.)  So while Member Plaintiffs may have preferred that Cigna used their providers' MultiPlan rates, they have no basis

---

[1] In this brief, "Cigna" refers to Cigna Corporation and Cigna Health and Life Insurance Company, consistent with Plaintiffs' grouping of those entities in their Complaint, but as noted in Section I.D. below, Cigna Corporation is not a proper defendant to this lawsuit.  "AMA" refers to new plaintiff American Medical Association, "MSNJ" refers to new plaintiff Medical Society of New Jersey, and "WSMA" refers to new plaintiff Washington State Medical Association.  "Complaint" and "AC" refer to Plaintiffs' first amended class action complaint, filed at ECF No. 37, and "Ex." refers to exhibits to the Declaration of Warren Haskel filed with this memorandum of law.  Unless otherwise noted, all emphasis is added, and all internal quotation marks, alterations, and citations are omitted.  Pursuant to Federal Rule of Civil Procedure 12, Cigna treats Plaintiffs' allegations as true for the purpose of its dismissal motion.  *See Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*, 2022 WL 2358414, at *1 n.3 (2d Cir. June 30, 2022) ("We draw the facts from the Complaint, assuming that all well-pleaded, nonconclusory factual allegations in the complaint are true.").

[2] Despite predicating their claim on Cigna's MultiPlan Contract, Plaintiffs do not attach it to their Complaint.  But because Plaintiffs have referenced and "relied on [the MultiPlan Contract] in drafting the complaint, and that document is thus integral to the complaint," the Court should consider it at the Rule 12 stage.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (documents "incorporated in the complaint by reference" may be considered on a motion to dismiss).

to allege that the terms of their ERISA plans or Cigna's purported "indirect contractual arrangement" with their providers required Cigna to do so.

Cigna pointed out that there was another fundamental problem with Member Plaintiffs' theory. Member Plaintiffs alleged that their benefits claims should be treated as in-network at their providers' MultiPlan rates because they argued that their providers meet the definition of "Participating Providers" under the terms of their plans. As explained above, that's not true. But even if they did, Member Plaintiffs' ERISA claims would still fail. That's because the plan definition of "Participating Provider" doesn't say anything about what benefits apply to Member Plaintiffs' claims, let alone guarantee that the plans will cover a provider's MultiPlan rates. Just the opposite, Member Plaintiffs' plans instruct members to refer to the plans' provider directories for a list of "network providers," and Cigna notifies plan members in those listings that MultiPlan providers are "out-of-network, non-participating providers" whose "discounts are not guaranteed."

As Cigna explained, Member Plaintiffs' ERISA § 502(a)(1)(B) claim for benefits and their ERISA § 502(a)(3) claim for breach of fiduciary duty both failed for these reasons, and their ERISA § 502(a)(3) claim failed for the additional reason that they did not seek the type of "equitable remedies" needed to support a Section 502(a)(3) claim. On top of that, Cigna explained that even if Member Plaintiffs had stated a claim under ERISA, they would lack standing to seek equitable relief because they are no longer members of their plans, and they lack standing to seek injunctive and any other prospective relief because they do not allege a threat of future harm. And while Member Plaintiffs lumped Cigna Corporation and Cigna Health and Life Insurance Company together as defendants, they include no allegations to support an ERISA claim against Cigna Corporation, nor do the terms of Member Plaintiffs' plans or the terms of the MultiPlan Contract support such a claim either.

2

Rather than respond to Cigna's motion to dismiss, Member Plaintiffs chose to amend their complaint, but they did not revise their ERISA claims.  Member Plaintiffs' claims therefore fail for all the reasons outlined in Cigna's original motion to dismiss, as raised again in Section I below.

The difference this time around is that the amended complaint tacks on three medical associations (the "Associations" or "Association Plaintiffs") as plaintiffs with four new counts raising alternative state-law theories in the hope that one would stick.  None does.

First, the Associations lack standing to assert claims on behalf of their members.  (*See* Sec. II.A., *infra*.)  All of Association Plaintiffs' claims seek declaratory or prospective equitable relief, but Association Plaintiffs do not allege the immediate threat of future harm.  Instead, they offer only allegations of past harm, which is not enough to get past Rule 12(b)(1).  Moreover, to prove the elements of their claims, such as justifiable reliance, injury, and causation, Association Plaintiffs would need their individual members to participate in this lawsuit.  The Associations' need for individual member participation also precludes them from having associational standing.

Second, Association Plaintiffs' negligent misrepresentation claim fails because it is based on the premise that Cigna promised to pay providers their MultiPlan rates by placing a MultiPlan logo on patient identification cards, but as courts have already found, a logo alone is not an actionable misrepresentation, nor would it be reasonable for Association Plaintiffs' provider members to rely on a logo as a guarantee of their MultiPlan rates when their contracts with MultiPlan say otherwise.  (*See* Sec. II.B.1.)

Third, Association Plaintiffs' claim for tortious interference with contract or business expectancy fails because the Associations have not identified a single contract or patient relationship that Cigna has interfered with, nor have they alleged that Cigna's decision not to apply

providers' MultiPlan rates based on the terms of Cigna's MultiPlan Contract is the kind of bad faith or maliciousness necessary to support a claim of tortious conduct.  (*See* Sec. II.B.2. *infra*.)

Fourth, the Associations similarly fail to plead that Cigna made a clear and definite promise to pay the MultiPlan rates by placing a MultiPlan logo on plan members' identification cards or that their provider members reasonably relied on the logo as that promise, two elements necessary to support the Associations' promissory estoppel claim.  (*See* Sec. II.B.3.)

Finally, Association Plaintiffs' Washington Consumer Protection Act claim fails because the Associations have not alleged the kind of consumer or public impact necessary to state a claim under the statute.  This claim is also preempted by ERISA.  (*See* Sec. II.B.4.)

For these reasons, and the reasons further explained below, the Complaint should be dismissed in its entirety.

## BACKGROUND

### The Parties

Cigna provides administrative services to health benefit plans sponsored by employers. (AC ¶¶ 1, 12.)  Many of those employers self-fund their plans, which means that they pay for claims for covered benefits from their own funds, and the employers, not Cigna, take on the risk that the benefits owed under the plans exceed whatever amounts that they expected to pay when they offered coverage to their employees.  (*Id*. ¶¶ 12, 21–23.)

Member Plaintiffs are former members of three self-funded, health benefit plans for which Cigna administers claims:  Plaintiff Stewart "was" a participant in a plan funded by DaVita Kidney Care, Plaintiff Plumacher "was" a beneficiary of a plan funded by Tropical Cheese Industries, Inc., and Plaintiff Montoya Marin "was" a participant in a Cigna plan funded by Stanley Black & Decker, Inc.  (*Id*. ¶¶ 21–23.)

Association Plaintiffs are three medical provider associations: one national in scope (the AMA) and the other two based in states (the MSNJ and WSMA).  (*Id.* ¶¶ 16–18.)  The Complaint identifies Dr. Schwaegler as a member of AMA and WSMA and Dr. Cooperman as a member of the AMA and MSNJ.  (*Id.* ¶ 88.)

**<u>Cigna's Role for Member Plaintiffs' Plans</u>**

Cigna provides several types of administrative services to self-funded plans, including administering claims and providing access to Cigna's networks of healthcare providers.  (*See id.* ¶ 2.)  To create these networks, Cigna contracts with providers, through which Cigna agrees to pay providers a negotiated rate—typically at a significant discount to the provider's billed charges— in exchange for giving the providers access to Cigna plan members on an in-network basis ("in-network" providers).  (*Id.*)  Certain health benefit plans also allow members to obtain covered healthcare services from out-of-network providers.  (*See id.*; *e.g.*, Ex. 2, DaVita Kidney Care Open Access Plus Medical Benefits Health Reimbursement Arrangement Plan at 13.)  Cigna does not contract with out-of-network providers to see plan members, so the provider may bill whatever they like for their services and the terms of the member's benefit plan will determine any coverage and reimbursement for the provider's claim.  (*See id.* at 13–14.)

Because in-network providers agree to discounted rates for their services, receiving services from in-network providers benefits both plans and plan members by reducing the costs of a member's healthcare.  Plans therefore typically have several mechanisms to encourage members like Member Plaintiffs to see in-network providers instead of out-of-network ones.  (*See* AC ¶ 2.) <u>First</u>, plans may require the member to pay higher deductibles (a threshold amount that the member owes toward claims before the plan will start paying), higher copayments (a fixed amount a member owes toward an individual claim), and higher co-insurance (a percentage that the member

owes toward the amount that the plan covers for an individual claim) for out-of-network claims compared to in-network claims.  (*See* Ex. 2 at 14–26.)

Second, plan sponsors also typically set a pricing formula in the benefit plan that caps the total amount that the plans reimburse for out-of-network services, which in Member Plaintiffs' plans is called the "Maximum Reimbursable Charge" or "MRC."  (*Id.* at 15, 68.)  For instance, in Ms. Stewart's plan, the "Maximum Reimbursable Charge" is set at "the lesser of the provider's normal charge" or "a policyholder-selected percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna." (*Id.* at 68.)  That means that the plan will cap reimbursement to that lesser amount, and the provider may bill the member for the remainder of its billed charge, a practice called "balance billing."  (*Id.* at 15.)  In comparison, in-network providers agree to accept their contracted rates with Cigna as payment in full.  (AC ¶ 2.)

**The Cigna-MultiPlan Relationship**

In some instances, plan sponsors may also access programs that Cigna uses to contain the costs of out-of-network care, including Cigna's "Network Savings Program."  As part of this program, Cigna contracts with a third party, MultiPlan, that gives Cigna the option for any particular claim to access MultiPlan's network of providers who contracted independently with MultiPlan.  (*Id.* ¶ 6.)  If a plan sponsor selects the option to use MultiPlan's Network Savings Program, a MultiPlan logo is included on a member's insurance benefit card.  (*Id.*)

Under this arrangement, when a plan member sees a provider that does not participate in Cigna's network but has a contract with MultiPlan, Cigna may elect to access that provider's negotiated rates with MultiPlan (the provider's MultiPlan rates) (Ex. 1 § 1.1.B.7.), which are typically a percentage discount off the provider's unilaterally set billed charges.  (*See* AC ¶ 42

(alleging that Ms. Stewart's providers negotiated a 10% discount off their billed charges), *id.* ¶ 65

(alleging that Ms. Plumacher's provider negotiated a 33% discount off his billed charges); *id.* ¶ 76

(alleging that Ms. Marin's provider negotiated a 15% discount off his billed charges).)

But this arrangement does not transform MultiPlan's providers into in-network providers

with Cigna.  Just the opposite, Cigna's MultiPlan Contract states,

> [i]t is understood that [MultiPlan's] providers described herein whose claims receive Claim Prices under this Agreement shall not be considered part of the Company's contracted provider network for purposes of those claims.

(Ex. 1 § 1.1.)

The contract also makes clear that Cigna may choose not to access MultiPlan's separately

contracted rates with MultiPlan's providers, but instead Cigna has the option to apply the terms of

the member's benefit plan:

> Notwithstanding any other provision of this Agreement and SOW, [Cigna] shall have the right to pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Claim Price made available by [MultiPlan].

(*Id.* § 1.1.B.7.)  Otherwise, Cigna would be forced to pay whatever rates MultiPlan independently

negotiates with out-of-network providers, even though Cigna has no say in that process.

As the Complaint shows, MultiPlan's rates with its providers can be extremely high.  For

instance, Plaintiff Stewart's providers' MultiPlan contract rates were for 90% of their billed

charges, meaning that they claim that Ms. Stewart's plan should have paid nearly $165,000 for her

back surgery in 2017 for charges totaling more than $180,000.  (*See* AC ¶ 43 (alleging facility

charged $119,766.80); *id.* ¶ 54 (alleging surgeon charged $63,099.17).)

The provisions that Cigna negotiated in its MultiPlan Contract help Cigna protect the

interests of both the plan and plan members.  By accessing a provider's MultiPlan rate for a

particular claim, the plan may pay more than the plan's MRC, but the member avoids balance-

7

billing—because by agreeing to accept its negotiated discount with MultiPlan, the provider also agrees not to balance-bill the member.  (*See id*. ¶ 8.)  But because Cigna does not negotiate MultiPlan rates with providers—MultiPlan does—Cigna retains the discretion to process a MultiPlan provider's claims based on the plan's out-of-network benefits if the provider's MultiPlan rates are too high.  (*See* Ex. 1 § 1.1.B.7.)

**Cigna's Handling of Member Plaintiffs' Claims**

Member Plaintiffs were treated by healthcare providers that do not have contracts with Cigna to participate in Cigna's network, and Cigna therefore processed their claims as out-of-network benefits.  (AC ¶¶ 50–51, 59, 71, 80.)  Cigna sent Explanations of Benefits ("EOBs") after the claims were processed which showed that the Network Savings Program was not used and that another out-of-network pricing program, such as repricing, was used to price the claim.  (*Id.* ¶ 69.)

Member Plaintiffs argue that Cigna should have instead processed their claims as in-network because their providers qualified as "Participating Providers" since, according to Member Plaintiffs, these providers are each

> a hospital, a Physician or any other health care practitioner or entity that has a ***direct or indirect contractual arrangement with Cigna*** to provide covered services with regard to a particular plan under which the participant is covered.

(Ex. 2 at 70; AC ¶¶ 3, 33; *see also* Ex. 3, Stanley Black & Decker, Inc. Open Access Plus Medical Benefits Plan at 75; Ex. 4, Tropical Cheese Industries, Inc. OAP Premium Plan at 56.)

As explained in the Argument section below, Member Plaintiffs' reading of their plans has no basis in the MultiPlan Contract that Cigna negotiated.  But Member Plaintiffs' reading also overlooks other terms of their plans.  For instance, Member Plaintiffs' plans each contain a schedule of benefits, which specify the benefits levels that the plans will cover according to whether the services are performed on an in- or out-of-network basis without any mention about

whether the services were performed by a "Participating Provider." (Ex. 2 at 13–26; Ex. 3 at 13–30; *see also* Ex. 4 at 8–14.)

In fact, Member Plaintiffs' plans make clear that they do not distinguish between "in-network" or "out-of-network" benefits simply because a provider has an "indirect contractual arrangement with Cigna" and therefore, in Member Plaintiffs' view, would allegedly meet the definition of "Participating Provider." For instance, the MRC provision in Ms. Plumacher's plan states that the amount paid by the plan for a "network provider" is based on the "fee agreed upon with the provider;" conversely, for "not a network provider," the MRC calculation is used. (Ex. 4 at 24.) And Member Plaintiffs' plans also notify plan members that they should consult Cigna's provider directories for a listing of "network providers." (Ex. 2 at 51; Ex. 3 at 56; *see also* Ex. 4 at 6; *see also* Ex. 2 at 7 (referring members to their "Physician Guide for a list of Participating Providers in [their] area").) Cigna separately maintains a directory of MultiPlan providers, and in offering that directory to members, Cigna makes clear:

> If the MultiPlan Savings Program logo appears on your Cigna ID card, you ***may*** be eligible to receive discounts when using an ***out-of-network, non-participating*** health care professional or facility that participates in the Network Savings Program. ***Discounts are not guaranteed.***

(Ex. 5, "Out-of-Network and MultiPlan," https://www.cigna.com/hcpdirectory/multiplan.)

The Complaint makes no mention of this, and the appeal letters that Member Plaintiffs cite in the Complaint indicate that Member Plaintiffs' providers knew that they were not in-network with Member Plaintiffs' plans and that their MultiPlan rates would not apply to Member Plaintiffs' claims. (*See* AC ¶ 50 (appeal letter claiming that Seattle Spine was entitled to its "full billed charges on the primary procedure 22558, as we have shown those charges are prevailing charges for that procedure," not to its MultiPlan rates).)

9

In contrast, Association Plaintiffs ignore the benefit plans, and focus on the MultiPlan logo on the benefit cards. (*Id.* ¶ 15.) Association Plaintiffs argue that their provider members' practice was to receive these cards and observe the logo before treating patients. (*Id.* ¶¶ 32, 41, 66.) Association Plaintiffs do not allege any communications with Cigna, including any discussions about the rate at which Cigna said it would reimburse the claims. Association Plaintiffs also argue that the EOBs were misleading because Cigna did not use the MultiPlan contract rates in paying the claim (*id.* ¶ 15), but they admit that the EOBs correctly state the claims were adjudicating using other programs, like repricing, by other vendors, like Zelis. (*Id.* ¶ 59.)

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed unless it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (The allegations must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "Dismissal is [also] proper under Rule 12(b)(1) for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the claim, such as when Article III standing is not met." *McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, 2021 WL 5286647, at *1 (2d Cir. Nov. 15, 2021).

When deciding a motion to dismiss, a district court may reference the complaint, and "documents attached to the complaint as exhibits or incorporated in the complaint by reference," *Kramer*, 937 F.2d at 773, which here include the plan documents and contracts that Plaintiffs reference in the complaint. (*See* AC ¶¶ 5–6 (describing Cigna's contract with MultiPlan); *id.* ¶¶ 30–39 (outlining Stewart's plan); *id.* ¶¶ 62–64 (referencing Plumacher's plan); *id.* ¶¶ 73–75 (summarizing Montoya Marin's plan).)

<u>**ARGUMENT**</u>

I.     **MEMBER PLAINTIFFS' ERISA CLAIMS (COUNTS I-III) SHOULD BE DISMISSED.**

    A.     **Member Plaintiffs' ERISA § 502(a)(1)(B) Benefits Claim Should Be Dismissed.**

To state a claim for benefits under ERISA § 502(a)(1)(B), Member Plaintiffs must allege that "[they were] wrongfully denied [a benefit] owed under the plan." *See Dickerson v. United Way of N.Y.C.*, 351 F. App'x 506, 507 (2d Cir. 2009). Section 502(a)(1)(B)'s "statutory language speaks of enforcing the terms of the plan, not of changing them," and the Supreme Court "has thus recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 100, 108–09 (2013).

Courts "apply rules of contract law to ERISA plans," including that they "must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous," nor "create an ambiguity by straining a contract's language beyond its reasonable and ordinary meaning." *See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009); *see also Bacquie v. Liberty Mut. Ins. Co.*, 435 F. Supp. 2d 318, 327 (S.D.N.Y. 2006), *aff'd*, 247 F. App'x 296 (2d Cir. 2007). Under ERISA, courts review plans "as a whole, giving terms their plain meanings." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002).

Member Plaintiffs' Section 502(a)(1)(B) claim unfolds in two steps. <u>First</u>, Member Plaintiffs allege that their providers are "Participating Providers" because they purportedly have "indirect contractual arrangement[s] with Cigna," since their providers had contracted rates with MultiPlan, and Cigna contracted with MultiPlan for access to MultiPlan's network. (*E.g.*, Ex. 2 at 70; AC ¶¶ 5–8.) <u>Second</u>, Member Plaintiffs allege that, so long as their providers qualify as "Participating Providers," their plans entitle them to receive in-network benefits for their providers' claims based on the rates that the provider separately agreed to with MultiPlan. (*Id.*)

11

As explained below, Member Plaintiffs' Section 502(a)(1)(B) claim fails at each step.

1.    Cigna's MultiPlan Contract Makes Clear MultiPlan Providers Are Neither In-Network nor Entitled to Payment at Their MultiPlan Rates.

For the first step of Member Plaintiffs' theory to work, Member Plaintiffs cannot simply allege that Cigna contracts with MultiPlan; they must allege that this contract has terms that qualify their providers as "Participating Providers" for the benefits claims at issue. But Member Plaintiffs do not plead **any** of the terms of Cigna's MultiPlan Contract, let alone terms that would support this allegation. That pleading failure warrants dismissal of their claim. *See Abernethy v. EmblemHealth, Inc.*, 790 F. App'x 250, 255 (2d Cir. 2019) ("Because Appellants have identified no language in the employment agreements, separation agreements, or applicable SPDs that is reasonably capable of being interpreted as promising vested benefits, Appellants fail to state an ERISA claim for denial of benefits (Count I).").

In fact, the terms of Cigna's contract with MultiPlan make it impossible for Member Plaintiffs to plausibly plead that their providers are "Participating Providers," starting with the first section of the contract, which states that MultiPlan-contracted providers "shall **not** be considered part of the Company's contracted provider network." (Ex. 1 § 1.1.) Member Plaintiffs cannot proceed on a theory that their providers are "Participating Providers" based on an "*indirect* contractual arrangement with Cigna" (AC ¶ 33 (emphasis in complaint)) when the contractual link—Cigna's MultiPlan Contract—makes clear that they do not participate in Cigna's network.

Member Plaintiffs also cannot maintain that their providers' alleged "indirect contractual arrangement with Cigna" required Cigna to pay their providers' MultiPlan rates. Here again, Cigna's MultiPlan Contract says just the opposite, making clear that Cigna "shall have the right to

pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Claim Price made available by [MultiPlan]." (Ex. 1 § 1.1.B.7.)[3]

These terms are critical to Cigna's ability to maintain affordable healthcare costs under Member Plaintiffs' plans. Because Cigna is not a party to MultiPlan's contracts with providers, Cigna has no say over what rates MultiPlan may ultimately agree to with MultiPlan's contracted providers. (AC ¶ 4.) And as the Complaint makes clear, those rates are based off billed charges that are unilaterally set by the provider and can be extremely high, for instance in the case of Plaintiff Stewart's providers, 90% of charges that totaled more than $180,000. (*Id.* ¶¶ 43, 54.) As the Second Circuit has recognized, "[a]n ERISA plan administrator . . . owes a fiduciary duty not just to the individual participant or beneficiary whose claim is under review, but to all of the participants and beneficiaries of the plan." *See Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 211–12 (2d Cir. 2015). To protect the plan and other plan members from excessive out-of-network costs, Cigna needed a way to reject MultiPlan rates if they would require the plan to pay significantly more than the plan would otherwise pay for an out-of-network claim. Cigna's MultiPlan Contract is that mechanism, and Member Plaintiffs cannot succeed on a theory about Cigna's "indirect contractual arrangement" with their providers by ignoring the terms of Cigna's MultiPlan Contract, the foundation of that so-called "arrangement."

2. Member Plaintiffs' Plans Also Do Not Require Treating MultiPlan Providers as In-Network or Paying MultiPlan Contract Rates.

Even if Member Plaintiffs' providers could qualify as "Participating Providers"—which they cannot—nothing in Member Plaintiffs' plans requires treating Participating Providers' bills

---

[3] Courts have recognized that MultiPlan's contracts with their providers make this point clear too. *See, e.g.*, Ex. 6, *L.I. Minimally Invasive v. MultiPlan*, Index No. 605520/2016, Dkt. 187 at 11 (NY Sup. Ct. Nassau Cnty. Apr. 24, 2020) ("[n]umerous sections in [MultiPlan's] Agreement [with the plaintiff provider] suggest that the Client had a choice in whether to access MultiPlan's Network for a service provided by the [plaintiff provider]").

as in-network claims, let alone specifies that the plan **must** use Member Plaintiffs' providers' contracted rates with MultiPlan to pay those claims.  So Member Plaintiffs fail at the second step of their theory too.

To start, the definition of "Participating Providers" says nothing about what benefits the plan will cover or the rates that the plan must pay.  Instead, that information is contained in the benefits schedules in Member Plaintiffs' plans, which explain that the plan will cover different levels of benefits based on whether the claims are "In-Network" or "Out-of-Network," not whether the claims were provided by a "Participating Provider."  (Ex. 2 at 14; Ex. 3 at 14; *see also* Ex. 4 at 11 (schedule of benefits providing for benefits for "Network" and "Non-Network" claims).)  For instance, the MRC provision for Ms. Plumacher's plan explains that the amount paid for services provided by a "network provider" would be "based on a fee agreed upon with the provider," otherwise, for a provider who "is not a network provider," the MRC calculation would be used. (Ex. 4 at 24.)  Nowhere does this definition use the term "Participating Provider."

Likewise, Member Plaintiffs' plans notify plan members that they should consult Cigna's provider directories for a listing of "network providers."  (Ex. 2 at 51; Ex. 3 at 53; Ex. 4 at 6.) Member Plaintiffs do not allege that their providers are listed as "network providers" in these directories.  Just the opposite, Cigna's link to MultiPlan's provider directory makes clear that the listed MultiPlan providers are "***out-of-network, non-participating*** health care professional[s] or facilit[ies] that participate[] in the Network Savings Program" and that "***[d]iscounts are not guaranteed.***"  (*See* Ex. 5, https://www.cigna.com/hcpdirectory/multiplan.)  Member Plaintiffs cannot plausibly allege that their providers should be considered in-network when their plans notify them of the opposite.

14

The distinction between "Participating Providers" and "In-Network" or "Network" benefits applies to other providers' claims as well.  For instance, a provider may generally be out-of-network with Cigna but still provide care on an in-network basis, such as where Cigna authorizes in-network benefits for an out-of-network provider when an in-network provider is unavailable or where a member receives emergency care.  (*Cf.* Ex. 2 at 18 (reflecting that in- and out-of-network emergency services are subject to the same cost share requirements).)

Another possibility is where Cigna negotiates a rate with an out-of-network provider for a single claim or set of claims, with the agreement that the claims will still be treated as out-of-network under the provider's patient's plan.  *See, e.g.*, *N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*, 2021 WL 3419356, at *1 (S.D. Fla. May 10, 2021) (noting agreement with hospital for fixed contractual rate for "out-of-network services").  Following Member Plaintiffs' logic, Cigna's "contractual arrangement" with this provider would make it a "Participating Provider" whose claims would be processed using in-network benefits even though Cigna's agreement with the provider says the opposite.  This absurd result shows why Member Plaintiffs' reading of their plans cannot stand.  *See Noecker v. S. Cal. Lumber Indus. Welfare Fund*, 2011 WL 13147419, at *4 (C.D. Cal. Feb. 25, 2011), *aff'd*, 522 F. App'x 411 (9th Cir. 2013) (plan administrator did not abuse discretion in denying benefits, as plaintiff's interpretation "makes no sense" and "would lead to impractical results"); *see also Fay*, 287 F.3d at 104 (reading plan provisions, exclusions, and exceptions together and concluding relief sought was unavailable under plan).

### B.     Member Plaintiffs' Alternative Claims for Breach of Fiduciary Duty Also Fail.

In addition to their claim for benefits under Section 502(a)(1)(B), Member Plaintiffs allege that Cigna violated "its fiduciary duties to honor written plan terms and to act in the best interests of its participants," and "its ERISA fiduciary duties, including its duty of loyalty" under ERISA Section 502(a)(1)(B)  (Count  I)  (AC  ¶¶  108–09),  or  alternatively  under  ERISA  Sections

502(a)(3)(A) (Count II) and 502(a)(3)(B) (Count III).  (*Id.* ¶¶ 110–13.)  None of these alternative causes of action state a claim either.

First, Section 502(a)(1)(B) is limited to a participant's claims "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*."  29 U.S.C. § 1132(a)(1)(B).  Because Member Plaintiffs have failed to allege Cigna breached any of their plan terms, Member Plaintiffs' "breach of fiduciary duty" claim under Section 502(a)(1)(B) fails too.  *See Lines v. Hartford Fin. Servs. Grp., Inc.*, 2022 WL 408820, at *7 (D. Conn. Feb. 10, 2022) ("[A] plaintiff cannot allege that a defendant breached a fiduciary duty by denying a claim, which is a cause of action properly founded on § 1132(a)(1)(B) because such a theory of liability seeks the benefits allegedly due under the policy at issue rather than equitable relief."); *see also Noecker*, 2011 WL 13147419, at *7 ("Because the denial of benefits was reasonable under the Plan, as discussed *supra*, Defendants did not breach any fiduciary duty."); *Minerley v. Aetna, Inc.*, 2019 WL 2635991, at *10 (D.N.J. June 27, 2019) ("Defendants present the common-sense argument that it cannot be a breach of the fiduciary duty of loyalty for an insurance company to enforce the terms of an insurance policy. The Court agrees."), *aff'd*, 801 F. App'x 861 (3d Cir. 2020).

Second, and relatedly, "a claim for equitable relief under § 502(a)(3) must be based on an underlying violation [of ERISA]."  *Radcliffe v. Aetna, Inc.*, 2021 WL 4477408, at *16 (D. Conn. Sept. 30, 2021).  Here, Member Plaintiffs' allegations supporting their Section 502(a)(3) claims all depend on Cigna's alleged breach of plan terms, either expressly (*see* AC ¶ 85), or impliedly based on the theory that Cigna owed a fiduciary duty to pay more on their claims—the "higher [MultiPlan contract] rates"—than what Cigna determined was appropriate under their plans (*see id*. ¶ 109).  Because Member Plaintiffs' flawed theory cannot support an alleged breach of plan

16

terms, their breach of fiduciary claims under Section 502(a)(3) fail too. *See Lines*, 2022 WL 408820, at \*7; *Noecker*, 2011 WL 13147419, at \*7; *Minerley*, 2019 WL 2635991, at \*10.

Third, Member Plaintiffs cannot premise a breach of fiduciary duty claim under Section 502(a)(3) based on the conduct covered by Section 502(a)(1)(B). As the Supreme Court has held, ERISA § 502(a)(3) supplies ERISA's "catchall[]" provisions, so "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'" as described under Section 502(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996).

Based on this bedrock principle of ERISA law, numerous courts have recognized that Section 502(a)(3) claims premised on a failure to pay plan benefits fail at the pleading stage. *See Lines*, 2022 WL 408820, at \*7 (denying leave to amend complaint to add Section 502(a)(3) claim because there is no viable "breach of fiduciary duty claim premised upon a denial of benefits"). Member Plaintiffs' Section 502(a)(3) claim should be dismissed for this reason too.

Fourth, Member Plaintiffs cannot distinguish their Section 502(a)(3) claims through allegations that Cigna breached the duty of loyalty by using its discretion "not to apply [a MultiPlan provider's] higher rates" or collecting "savings fees" by paying less than those rates. (AC ¶¶ 86–87, 109.) As explained above (*see* Sec. I.A., *supra*), Cigna "owes a fiduciary duty . . . to all of the participants and beneficiaries of the plan," not just Member Plaintiffs. *See Roganti*, 786 F.3d at 211–12. While Member Plaintiffs allege that they may have paid less if Cigna paid their providers' MultiPlan rates, they ignore the fact that their plans would have paid significantly more, even though each of Member Plaintiffs' plan sponsors designed their plans to pay a lower portion of a provider's claim when a plan member accessed out-of-network benefits, as Member Plaintiffs did here. (Ex. 3 at 13–30; Ex. 2 at 13–26; Ex. 4 at 8–14.) Member Plaintiffs cannot claim that Cigna

breached its fiduciary duties by applying its discretion consistent with the plan design.  *See Roganti*, 786 F.3d at 211–12.

Fifth, Member Plaintiffs seek dressed-up legal remedies, not "equitable" ones permitted under Section 502(a)(3).  "In determining the propriety of a remedy [under Section 502(a)(3)], we must look to the real nature of the relief sought, not its label."  *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003).  While Member Plaintiffs throw in requests for relief like "disgorge[ment]" and "restitution" (AC, Wherefore Clause ¶ E), no matter how they slice it, Member Plaintiffs seek payment of plan benefits, which does not constitute an equitable remedy. This is an independent basis for dismissal.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005) (plaintiff was not seeking equitable relief under Section 502(a)(3) where she petitioned for "disgorgement of ill-gotten gains" and "restitution of premiums paid.").

## C.    Member Plaintiffs Lack Standing To Seek Equitable or Prospective Relief.

Member Plaintiffs cannot seek either equitable or prospective relief under either ERISA Sections 502(a)(1)(B) or 502(a)(3) because they are no longer members of Cigna-serviced plans. *See id.* at 103 (former plan member lacked standing to pursue injunction under Section 502(a)(3)); *Scanlan v. Kodak Ret. Income Plan*, 678 F. Supp. 2d 110, 115 (W.D.N.Y. 2010) (where plaintiff sought declaratory and injunctive relief under Sections 502(a)(1)(B) or 502(a)(3), "[his] request for equitable relief on behalf of others . . . does not imbue him with individual standing to pursue a claim in which he no longer has any personal interest.").

Member Plaintiffs also cannot seek injunctive or other prospective relief for the separate reason that they do not allege that they "face a threat of injury that is 'actual and imminent,'" and therefore lack Article III standing for forward-looking relief.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020) (confirming "[t]here is no ERISA exception to Article III").  While Member Plaintiffs allege that

18

Cigna improperly underpaid their benefits in the past, Member Plaintiffs offer no allegations indicating that Member Plaintiffs face a threat of the same conduct in the future, including any allegation that they intend to or will see a MultiPlan-contracted provider in the future; nor could they allege that, given that they are no longer members of Cigna-serviced plans.  For that reason alone, Member Plaintiffs lack standing to seek injunctive or other prospective relief against Cigna. *See, e.g.*, *Merriam v. Demoulas Super Markets, Inc.*, 2012 WL 931347, at *6 (D. Mass. Mar. 20, 2012) (dismissing plan members' request for "injunctive and other equitable relief" under ERISA because their "allegations [we]re insufficient here because [they did] not allege[] that they face[d] continuing harm"); *Delgado v. ILWU-PMA Welfare Plan*, 2018 WL 8014336, at *3 (C.D. Cal. Nov. 20, 2018) ("The patients' claims for declaratory and injunctive relief fails on both accounts. Because these claims concern future benefits, the alleged injury is hypothetical or speculative.").

### D.     Cigna Corporation Is Not a Proper Defendant.

Member Plaintiffs lump Cigna Corporation together with Cigna Health and Life Insurance Company ("CHLIC") in their Complaint.  But the terms of Member Plaintiffs' plans show that CHLIC—not Cigna Corporation—was the Cigna entity responsible for administering claims for Member Plaintiffs' plans and to which Member Plaintiffs' plan sponsors delegated discretionary authority.  (Ex. 2 at 5, 62 ("Cigna Health and Life Insurance Company (Cigna) provides claim administration services to the plan" and is delegated discretionary authority); Ex. 3 at 5, 67 (same); Ex. 4 at 7 ("Cigna Health and Life Insurance Company (Cigna) processes claims" and has discretionary authority).)  Cigna Corporation was also not the entity that signed the MultiPlan Contract on which Member Plaintiffs base their ERISA theories.  (Ex. 1 at 1.)  And Member Plaintiffs do not plead any facts to suggest that Cigna Corporation, a holding company, had any role with respect to their plans or their benefits claims that would fill these gaps.  Member Plaintiffs have therefore failed to plead Cigna Corporation is a proper defendant for the ERISA claims, and

it should be dismissed as a party. *See Est. of Kenyon v. L + M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627, 633 (D. Conn. 2019) (dismissing claims against defendant Triple S because "even though the estate alleges that the plan designated Triple S as a claims administrator, the text of the plan itself does not show Triple S to have had the discretion that would make it a proper defendant in its capacity as a claims administrator").

## II.     ASSOCIATION PLAINTIFFS' CLAIMS (COUNTS IV-VII) SHOULD BE DISMISSED.

Association Plaintiffs bring causes of action for negligent misrepresentation (Count IV), tortious interference with a contract or business expectancy (Count V), promissory estoppel (Count VI), and violation of the Washington Consumer Protection Act (VII) seeking injunctive, declaratory, and equitable relief, as opposed to monetary relief.  These claims fail because (1) Association Plaintiffs lack standing to bring these claims; and (2) Association Plaintiffs fail to state a claim for each count.

### A.     Association Plaintiffs Do Not Have Standing and Their Claims Should Be Dismissed.

Association Plaintiffs purportedly bring their four claims "all in an associational capacity on behalf of their members in New Jersey and Washington State" and "as representatives of the Litigation Center of the American Medical Association and State Medical Societies . . . ." (AC at 1.)[4]  Association Plaintiffs, however, "as the part[ies] invoking federal jurisdiction, bear[] the burden of establishing" standing and must "allege facts that affirmatively and plausibly suggest that [they have] standing to sue." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

---

[4] Relying solely on the supposed harm to their members, Association Plaintiffs do not allege any other bases on which their alleged standing is predicated, such as direct or third-party standing.  Even if they had, Association Plaintiffs would still be unable to make the requisite showings under those theories. *See Juv. Matters Trial Laws. Ass'n v. Jud. Dep't*, 363 F. Supp. 2d 239, 246, 251 (D. Conn. 2005).

To satisfy Article III standing, a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499–500 (1975).  "Associational standing carves only a narrow exception" to this rule, and "[t]he possibility of such representational standing . . . does not eliminate or attenuate the constitutional requirement of a case or controversy." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004); *Warth*, 422 U.S. at 511.  For an association to bring claims on behalf of its injured members, it must demonstrate that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Com. Workers Union Loc.751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Association Plaintiffs fail to allege they have standing for two reasons: they lack Article III standing, as they seek only prospective relief but offer no plausible allegations that they face a threat of future harm, and the inherently individualized nature of their claims and requested relief would require the participation of individual members.

           1.      Association Plaintiffs Fail to Allege That Their Members Have Standing To Pursue Future Injunctive, Declaratory, and Equitable Relief.

Association Plaintiffs have not alleged a threat of future injury to support their requests for equitable relief, which are purely prospective in nature.  (AC, Wherefore Clause ¶¶ B, C (seeking relief enjoining "misconduct described herein" and declaring "that Cigna violated its legal obligations," without any request for monetary relief).)  "Where, as here, plaintiffs seek injunctive or declaratory relief, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d

Cir. 2021).  The alleged future injury must be "*certainly impending* to constitute injury in fact," and, like allegations of past injury, "allegations of *possible* future injury," and "current risk" of injury are also insufficient.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 437 (S.D.N.Y. 2015).

Association Plaintiffs plead no facts that their members face "certainly impending" future injury.  *Id.*  The gravamen of Association Plaintiffs' claims is that Cigna allegedly induced providers into treating Cigna plan members by supposedly misleading them into thinking Cigna would apply the providers' MultiPlan rates.  (AC ¶¶ 92, 118, 126, 134, 139.)  In support, the Complaint alleges that providers interpreted the MultiPlan logos on insurance cards as an agreement from Cigna to apply the MultiPlan rates to their detriment, allegedly learning that Cigna had a different policy only after they submitted their claims.  (*Id.* ¶¶ 41, 66, 77, 92.)  Association Plaintiffs similarly allege that Cigna then indicated on EOBs that the MultiPlan rates didn't apply, further reflecting Cigna's policy that Plaintiffs all challenge.  (*Id.* ¶ 15.)

As explained below (Sec. II.B., *infra*), Association Plaintiffs cannot plausibly make such a claim, but regardless, the very nature of their allegations shows that Association Plaintiffs and their members are at least now fully aware of how Cigna interprets its plans and the MultiPlan Contract.  (AC ¶ 9 ("Instead of applying the MultiPlan Contracts . . . Cigna applied the plan's lower reimbursement methodology for Non-Participating Providers").)  While Association Plaintiffs may disagree with that interpretation, they cannot plausibly allege that any of their provider members risk a harm from being misled that Cigna will always apply their MultiPlan rates when they treat Cigna plan members in the future, because Cigna has left no doubt that it won't.

As a result, any alleged detrimental reliance and misrepresentations on which Association Plaintiffs base their claims are in the ***past***, and therefore cannot support claims for declaratory,

injunctive, or equitable relief in the ***future***.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("Because respondent alleges only past infractions of EPCRA, and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Ross*, 115 F. Supp. 3d at 437 ("Plaintiff['s] conclusory allegations of current risk do not suffice to confer Article III standing.").   The Associations therefore lack standing to raise their claims.  *See Clapper*, 568 U.S. at 409 (plaintiffs' allegations of potential future injury failed to satisfy Article III standing requirement).

       2.    Association Plaintiffs' Claims and Requested Relief Require the Participation of Their Members.

Association Plaintiffs lack standing for the independent reason that determining the merits of their causes of action could be accomplished only through their individual members' participation given the inherently individualized and fact-specific nature of their claims and requested relief.  *See Bano*, 361 F.3d at 715 ("If the involvement of individual members of an association is necessary, either because the substantive nature of the claim or the form of the relief sought requires their participation, we see no sound reason to allow the organization standing to press their claims . . . .").

For example, justifiable reliance is an element of Association Plaintiffs' promissory estoppel and negligent misrepresentation claims (Counts IV and VI, respectively).  (*See infra*, Sec. II.B.1., II.B.3.)  Association Plaintiffs allege that their members relied on the MultiPlan logo on their patients' insurance cards as a representation that Cigna would pay their providers' MultiPlan contract rates.  But proving whether or not Association members indeed relied on the logo is an individualized inquiry that will unavoidably require the participation of those members.  *See Bondholder Comm. on Behalf of Owners of Quad Cities Reg'l Econ. Dev. Auth. First Mortg. Revenue Bonds Series 2013A v. Sauk Valley Student Hous., LLC*, 2019 WL 1864121, at *2 (D.N.J.

Apr. 24, 2019) ("Reliance is nearly always an individualized question, requiring case-by-case determinations of what effect, if any, the misrepresentation had on plaintiffs' decision-making."); *Westfield Park Homeowners' Ass'n, Inc. v. NVR, Inc.*, 2007 WL 9774486, at *2 (N.D. Ohio Mar. 27, 2007) (no associational standing for homeowners' association because "establish[ing] the fraud claim would require each homeowner to identify the specific oral representations that were allegedly untrue and ***establish justifiable reliance upon those representations***").  That's especially true given the public-facing materials that Cigna and MultiPlan made available for Association Plaintiffs' membership explaining that their rates may ***not*** apply, even if a MultiPlan logo appeared on their patients' cards.  (Ex. 5.)

Association Plaintiffs' tortious interference claims likewise call for extensive participation from their individual members.  Association Plaintiffs allege that Cigna interfered with "the providers' contracts or expectancy relating to Cigna's members" and "with the patient-physician relationship," and "damaged" the physician-patient relationship.  (AC ¶¶ 127–28.)  As explained below (*see* Sec. II.B.2.), to plead a tortious interference claim, a plaintiff must allege injury to a ***specific*** patient relationship or member contract, evidence which could only come from individual Association Plaintiffs' members.  *See Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (where "[association] alleges that [defendant's] policy improperly interferes with multiple, specific contracts between individual representatives and their manufacturers," "see[ing] no way to resolve such fact-specific tort claims without participation of the individual members of the association"); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*, 2016 WL 7376847, at *4 (D.D.C. Dec. 19, 2016) (member participation was required for due process claim, as "[c]entral to both of [association's] theories of the case is that its members have lost banking relationships as a result of Operation Choke Point"); *Nat'l Coal. Gov't of Union*

*of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 344 (C.D. Cal. 1997) (organization lacked association standing, as its tort claims could only be adjudicated by considering member testimony).

The same goes for Association Plaintiffs' Washington Consumer Protection Act claim, which requires an individualized analysis into causation of harm to each member. *See Kelley v. Microsoft Corp.*, 2011 WL 13353905, at *3 (W.D. Wash. May 24, 2011) (in Washington Consumer Protection Act class certification decision, "[t]he Court reaffirms its previous determination that causation requires a fact-intensive, individual inquiry into the motivations of each consumer."). Association Plaintiffs point to statements in EOBs as the basis for their claim (AC ¶¶ 92–93, 139), but those EOBs are provided ***after*** services are rendered, and some Association members may not have seen those statements at all. Association Plaintiffs will need to show that individual provider members, if any, saw those statements, and that those statements actually caused injury to the provider. *Kelley*, 2011 WL 13353905, at *3. They can't do that without getting individual members involved.

Moreover, the three common law claims appear to be brought on behalf of providers around the country through the AMA, but Association Plaintiffs only allege that Cigna violated New Jersey and Washington law. (AC ¶¶ 91, 95.) Association Plaintiffs do not explain how state law from New Jersey or Washington could apply to their members from other states. Nor do they explain how they plan to deal with conflicts in state law, which is an issue for even the two states they identify. (*See, e.g.*, *infra* at 31, n.5 (New Jersey but not Washington state law imposes special duty obligation for negligent misrepresentation claim); *infra* at 35, n.7 (New Jersey courts have found economic loss doctrine applies to tortious interference claims; Washington courts have not)); *see also Friends for Am. Free Enter. Ass'n v.*, 284 F.3d at 577 ("As a preliminary matter, individual participation is necessary to resolve the basic choice-of-law question.").

The relief that Association Plaintiffs seek raises individualized issues as well. The Associations' core dispute is that their members were underpaid, but "[c]ourts consistently decline to find representative standing when a plaintiff brings a claim on behalf of its members for money damages." *Massone on behalf of U.S. Sec. Officers v. Washington*, 2021 WL 3863081, at *5 (S.D.N.Y. Aug. 30, 2021) (collecting cases). So instead of seeking monetary relief, Association Plaintiffs seek to "permanently enjoin[] Cigna from engaging in the misconduct described [in the complaint]." (AC, Wherefore Clause ¶ C.)

But not all of Association Plaintiffs' members may want this injunctive relief. Providers independently negotiate contracts with MultiPlan, and Member Plaintiffs' providers' MultiPlan contracts show that those contracts are ***not*** identical and bear differ rates. (AC ¶¶ 42, 65, 76.) As a result, some providers' negotiated MultiPlan rates may be ***lower*** than the amount that Cigna may pay pursuant to the plan's out-of-network benefits or through the application of Cigna's other vendor programs, so these providers would not prefer the blanket relief that Association Plaintiffs seek. *See, e.g.*, *Cmty. Fin. Servs.*, 2016 WL 7376847, at *6 ("The fact that all cases in which associational standing has been found to exist involved a request for injunctive relief, does not mean that associational standing exists in all cases where an association seeks injunctive relief."). Similarly, as the Complaint notes, when a provider's MultiPlan rates apply, they can't balance bill the member, which is additional money that at least some of Association Plaintiffs' members wouldn't want to give up but would have to if the Associations succeed on their claim. (AC ¶ 13.)

These differences among Association Plaintiffs' membership creates impermissible conflicts that defeat associational standing. *See Juv. Matters,* 363 F. Supp. 2d at 247–48 (claims and relief sought required member participation, where case theory propounded by association "would conflict with the interests of at least some of its members, who would also wish to address

the issue themselves"); *Westfield Park*, 2007 WL 9774486, at *2 (claims would require individual member participation, as it involved "136 separate sales transactions involving nine different sales representatives" with "each sales transaction was negotiated and conducted separately"); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (individual participation necessary where association's complaint alleged "variations in payments wrongfully withheld, in the treatments for which payment has been withheld, and in the individual situations of [association] members").

Ultimately, Association Plaintiffs' claims are the wrong vehicle to bring this lawsuit. Every claim they assert requires participation of their members to prove the elements of those claims, and the relief they seek creates conflicts among their members.  Association Plaintiffs' claims should be dismissed for lack of associational standing.  *See Bano*, 361 F.3d at 715.

## B. Association Plaintiffs' Claims Should Be Dismissed for Failure To State a Claim.

Association Plaintiffs fail to state claim under Rule 12(b)(6) as well.  The Associations attempt to spin Cigna's use of a MultiPlan logo on member identification cards and allegedly contrary post-service EOBs into four different causes of action: (1) negligent misrepresentation; (2) tortious interference with a contract or business expectancy; (3) promissory estoppel; and (4) a violation of the Washington Consumer Protection Act ("WCPA").  All four claims boil down to the same thing: Association Plaintiffs allege that Cigna was wrong for not using the MultiPlan rates when paying the Associations' members' claims.  But Cigna was not contractually obligated to use those rates, so no matter how Association Plaintiffs attempt to repackage the same claim, these claims all fail.  For this reason and several others, the Association Plaintiffs' counts should be dismissed for failure to state a claim.

        1.      Association Plaintiffs' Negligent Misrepresentation Claim (Count IV) Should Be Dismissed.

Association Plaintiffs have failed to plead the elements of negligent misrepresentation under either New Jersey or Washington law.[5]  Under New Jersey law, "[t]o establish a claim for negligent misrepresentation, a plaintiff must establish that (1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance." *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 409 (D.N.J. 2016). The Washington test is similar.  *See AVH & BJ Holdings 2, LLC v. LaClare Invs., LLC*, 7 Wash. App. 2d 1066 (2019) ("To prevail on a claim of negligent misrepresentation, the plaintiff must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.").  Because Association Plaintiffs have not pled all of these elements, their misrepresentation claim should be dismissed.

<u>First</u>, Association Plaintiffs fail to plead a misrepresentation of a past or existing material fact, which both New Jersey and Washington law require to satisfy the first element of a false statement.  *See, e.g.*, *Micro Enhancement Int'l., Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412, 436–37 (Wash. Ct. App. 2002) ("A false representation as to a presently existing fact is a prerequisite to a misrepresentation claim."); *Wilson v. McCann*, 2014 WL 5326173, at *5 (N.J. Super. Ct. App. Div. Oct. 21, 2014) ("In order to sustain a cause of action based on negligent

---

[5] Cigna assumes for this Motion that New Jersey and Washington law apply because that's what Plaintiffs plead.  (AC ¶¶ 91, 95.)

misrepresentation, the plaintiff must establish that the defendant negligently made an incorrect statement of a past or existing fact . . . .").

Multiple courts—including one interpreting New Jersey law—have held that Cigna's use of the MultiPlan logo on its members' identification cards "does not constitute an incorrect statement of past or existing fact regarding the rate at which Defendants would reimburse Multiplan providers." *See Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, 2018 WL 2441768, at *7 (D.N.J. May 31, 2018) (holding that negligent misrepresentation claim must be dismissed for lack of actionable representation where plaintiff argued that MultiPlan logo represented payment of MultiPlan contract rates); *see also Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, 2022 WL 158658, at *7 (S.D.N.Y. Jan. 18, 2022) ("[t]he card logo advertises to the viewer that Cigna and United are in the business, not that they have underwritten the cardholders' particular transaction").

As the *Plastic Surgery* court concluded,

> [T]o the extent that the inclusion of Multiplan's logo even constitutes a statement attributable to [Cigna], it certainly does not constitute an incorrect statement of past or existing fact regarding the rate at which [Cigna] would reimburse Multiplan providers.

*Plastic Surgery Ctr.*, 2018 WL 2441768, at *7.  At most, "the inclusion of the logo on [the member's] identification card may indicate some relationship between Multiplan and Cigna" but "it cannot be plausibly inferred, from the inclusion of the logo alone, that [Cigna] would reimburse a provider within the Multiplan network at the Multiplan Rate."  *Id.*; *see also Atl. Neurosurgical*, 2022 WL 158658, at *7.

So too with Association Plaintiffs' negligent misrepresentation claim.  All Association Plaintiffs allege is that Cigna included the MultiPlan logo on plan members' identification cards. (AC ¶ 6.)  Missing is any allegation that anything on the plan members' cards or elsewhere

represented that Cigna promised to utilize the MultiPlan network in every instance when a provider is out-of-network with Cigna but has a contract with MultiPlan. Thus, as in *Plastic Surgery*, the negligent misrepresentation claim should be dismissed.

Moreover, to the extent that Association Plaintiffs' members interpreted MultiPlan's logo as a promise of payment, that would have been a promise of ***future*** payment, made when the provider saw the identification card before treatment. (AC ¶¶ 41, 66, 77, 92–93.) But both New Jersey and Washington courts hold that a negligent misrepresentation claim cannot be supported by representations concerning ***future*** conduct. *See Stolba v. Wells Fargo & Co.*, 2011 WL 3444078, at *4 (D.N.J. Aug. 8, 2011) ("Statements as to future or contingent events do not constitute misrepresentations, intentional or negligent, even though they may turn out to be wrong."); *Micro Enhancement*, 110 Wash. App. at 436–37 ("[F]ailure to perform those promises alone cannot establish the requisite negligence for negligent misrepresentation."). A logo's alleged pre-service promise of the rates that Cigna will apply is such a representation. *See Plastic Surgery*, 2018 WL 2441768, at *7; *see also Atl. Neurosurgical*, 2022 WL 158658, at *7.

Second, Association Plaintiffs have not adequately pled that Cigna was negligent because they have not alleged that Cigna would have or should have known that it agreed to always pay MultiPlan rates simply by including the MultiPlan logo on plan member identification cards. Indeed, the Complaint offers no facts to support this element at all, instead merely repeating the element in a conclusory fashion. (AC ¶ 92 ("Cigna knew or should have known that providers would reasonably understand and rely upon that representation and promise to mean that Cigna would pay benefits according to the rates in the MultiPlan Contracts when processing claims.").) This alone is fatal to the Associations' negligent misrepresentation claim. *Goodman v. Goldman, Sachs & Co.*, 2010 WL 5186180, at *9 (D.N.J. Dec. 14, 2010) (dismissing negligent

misrepresentation claim where plaintiff in "a conclusory fashion" alleged defendant acted negligently); *see also Wessa v. Watermark Paddlesports, Inc.*, 2006 WL 1418906, at *2 (W.D. Wash. May 22, 2006).

But even if they tried, Association Plaintiffs cannot plausibly allege Cigna was negligent when it chose not to apply a provider's MultiPlan rates because Cigna's MultiPlan Contract says that it had the right not to do so.  (*See* Ex. 1 § 1.1.B.7. (Cigna "shall have the right to pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Claim Price made available by [MultiPlan]."). )  In fact, as numerous courts have held, the providers' contracts make this clear too, disclosing that administrators like Cigna have the option to access a provider's MultiPlan rates, not an obligation.  *See*, *e.g.*, Ex. 6, *L.I. Minimally Invasive* at 11 (finding MultiPlan's clients were not required to access the network because "[n]umerous sections in [MultiPlan's] Agreement [with the plaintiff provider] suggest that the Client had a choice in whether to access MultiPlan's Network for a service provided by the [plaintiff]"); *see also Temple Univ. Children's Med. Ctr. v. Grp. Health, Inc.*, 413 F. Supp. 2d 530, 537 (E.D. Pa. 2006); *Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, 129 F. Supp. 3d 160, 175 (E.D. Pa. 2015), *aff'd in part, vacated in part, remanded*, 703 F. App'x 126 (3d Cir. 2017); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 484 (5th Cir. 2018).  The Complaint offers no explanation of how Cigna could have believed or should have known that it was promising to pay the MultiPlan rates by putting a logo on an insurance card, when the MultiPlan agreements imposed no requirement that Cigna would do so.

Third, Association Plaintiffs have not pled justifiable reliance.[6]  To the contrary, it was unreasonable for the Associations' membership to rely on a single logo on a patient identification

---

[6] As a threshold issue, under New Jersey, "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the

card when the providers each had their own contracts with MultiPlan that dictated the terms of their reimbursement. *See supra* at 31–32 (citing cases); *see also Facteon, Inc. v. Comp Care Partners,* LLC, 2014 WL 6685380, at *5 (D.N.J. Nov. 26, 2014) (dismissing negligent misrepresentation claim for failure to plead reliance where allegations showed "reliance was unreasonable as a matter of law"); *Alexander v. Cigna Corp.*, 991 F. Supp. 427, 436 (D.N.J. 1998) (finding "it is manifestly unreasonable for plaintiffs to assert that they reasonably relied on any alleged statements" given "the express language of the contracts, signed by the plaintiffs"); *Seattle-First Nat'l Bank v. Crystal & Gold, Ltd.*, 85 Wash. App. 1084 (Wash. Ct. App. 1997) (reliance was not reasonable where "promises contradict the written agreements' unambiguous language").

Just as important, reliance on a logo on patient identification cards is not objectively reasonable in light of the information publicly available to the Associations' membership, including Cigna's provider directory website, which states that "[i]f the MultiPlan Savings Program logo appears on your Cigna ID card, you *may* be eligible to receive discounts when using an out-of-network" but "*[d]iscounts are not guaranteed*." (Ex. 5.) In the face of this disclaimer, Association Plaintiffs' members could not claim justifiable reliance on the MultiPlan logo as a guarantee of payment of their MultiPlan rates.

<u>Fourth</u>, the negligent misrepresentation claim is barred by the economic loss doctrine, which prohibits tort claims where the alleged injury flowed from a contract and can be remedied with monetary damages. *See Plastic Surgery*, 2018 WL 2441768, at *7–8; *Alejandre v. Bull*, 159 Wash. 2d 674, 683 (Wash. 2007) (finding economic loss doctrine applied to negligent

---

injured party such that reliance on the negligent misrepresentation is justified." *Goodman*, 2022 WL 2358403, at *6. Here, the Association Plaintiffs and their members, who are medical providers, have not pled that Cigna, a claims administrator, owed them an independent relationship recognized by that law, such that Cigna could be liable for a negligent misrepresentation to them. *Id.* (dismissing negligent misrepresentation claim because "plaintiff has not alleged facts to show that he and UBS had anything other than an ordinary business relationship."). Thus, the negligent misrepresentation claim fails under New Jersey law for this reason.

misrepresentation claim because "the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses."). Association Plaintiffs plead that their provider members have a contract with MultiPlan, that MultiPlan has a contract with Cigna, and the provider should have been paid its MultiPlan rates by Cigna.  (AC ¶¶ 5–7, 13.)

Facing identical facts, the court in *Plastic Surgery* observed, "the alleged misrepresentation in this case is not extraneous to the Multiplan Agreements; rather, Plaintiff specifically points to the agreements with Multiplan as forming the basis of its negligent misrepresentation claim." 2018 WL 2441768, at *7–8.  As the court concluded, because the negligent misrepresentation claim is "premised solely on allegations intrinsic to the alleged Multiplan Agreements, the Court finds that the economic loss doctrine applies."  *Id.*

> 2. Association Plaintiffs' Tortious Interference Claim (Count V) Should Be Dismissed.

Association Plaintiffs allege that Cigna interfered with "providers' contract or expectancy relating to the Cigna members."  (AC ¶ 125.)  This claim fails for multiple reasons.

<u>First</u>, Association Plaintiffs must plead a breach of that contract before they can allege that Cigna interfered with it.  *See RJR Mech., Inc. v. Vassallo*, 2017 WL 1534192, at *7–8 (D.N.J. Apr. 27, 2017) ("Plaintiff does not state a claim for tortious interference, because it does not allege any Defendant caused a third party to breach a contract.").  But the Complaint does not plead the existence of any contracts between Association Plaintiffs' members and their patients or any of their terms, let alone that they were breached.

Association Plaintiffs similarly fail to identify a single patient who their members lost because Cigna didn't pay the MultiPlan rates, an allegation necessary to plead that Cigna tortiously interfered with a business expectancy.  *See Advanced Oral Techs., L.L.C. v. Nutrex Rsch., Inc.,*

2011 WL 1080204, at *4 (D.N.J. Mar. 21, 2011) (tortious interference claim dismissed where the claimant failed to identify any customers or potential customers that it lost because of its adversary's alleged wrongful conduct); *Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*, 2019 WL 4688803, at *6 (W.D. Wash. Sept. 26, 2019) (dismissing tortious interference claim because "Plaintiff does not identify any specific customers or contracts that Defendants purportedly interfered with"); *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 352–353 (Wash. 2006) (holding that unspecified references to lost "vendors" are not enough). The tortious interference claim fails for this reason alone. *See also Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 Fed. App'x 787, 790 (3d Cir. 2009) (upholding dismissal of tortious interference claim where claimant failed to "identify a single, specific customer that [it] either lost or could have acquired but for Appellees' conduct").

Second, Association Plaintiffs have not alleged that Cigna acted with "malice, i.e., intentional interference without justification"—another necessary element of tortious interference. *See Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 420 (D.N.J. 2016) (applying New Jersey law). Cigna's agreement with MultiPlan did not require it to use the MultiPlan rates, so Association Plaintiffs can't contend that Cigna was not justified in doing so. Nor, as a matter of law, can Association Plaintiffs claim that Cigna's exercise of its contractual rights in pricing the Association members' claims was malicious simply because Cigna financially benefited from doing so. *See Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003) (that a party "acted to advance [its] own interest and financial position does not establish the necessary malice or wrongful conduct" for tortious interference); *Koch v. Mut. of Enumclaw Ins. Co.*, 108 Wash. App. 500, 510–11 (Wash. Ct. App. 2001) (holding defendant's "financial interest" in allegedly tortious interference did not show defendant acted "dishonestly or in bad faith").

That leaves the Associations with their allegation that Cigna's EOBs are misleading, but that also falls short.  For example, Association Plaintiffs admit that the EOBs at issue say that the claims were ***not*** adjudicated using the MultiPlan rates, but instead were adjudicated using other means.  (*See, e.g.*, AC ¶ 69.)  Association Plaintiffs' gripe appears to be that Cigna should have used the MultiPlan rates instead of those other methods, but if the claim was paid using another method and the EOB says so, the EOB is accurate.  So rather than alleging a misrepresentation, Association Plaintiffs just repackage the Member Plaintiffs' ERISA theory that Cigna is obligated to use the MultiPlan rates, not that Cigna acted with some malice by failing to do so.[7]

> 3.    Association Plaintiffs' Promissory Estoppel Claim (Count VI) Should Be Dismissed.

The only thing Association Plaintiffs point to in support of their promissory estoppel claim is the logo on patients' Cigna identification cards.  (*See* AC ¶ 131.)  To prevail on a promissory estoppel claim, however, Association Plaintiffs must plead a "clear and definite promise" made by Cigna and justifiable reliance by Association Plaintiffs' members.  *See U.S. Bank Nat'l Ass'n v. Fowlkes*, 2016 WL 392713, at *16 (Ch. Div. Jan. 26, 2016); *Malaker Corp. S'holders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 479 (App. Div. 1978) (a "clear and definite promise" is the "[s]ine qua non" of a promissory estoppel claim); *Sloma v. Wash. State Dep't of Ret. Sys.*, 12 Wash. App. 2d 602, 622–23, *review denied sub nom. Sloma v. Dep't of Ret. Sys.*, 195 Wash. 2d 1028 (2020) (holding that "promissory estoppel claim fails on the first element" because plaintiff did not "make a clear and definite promise").

---

[7] Under New Jersey law, the economic loss doctrine also bars the Associations' tortious interference claim because the only duty that the Associations allege Cigna could possibly have had to pay the MultiPlan rates would be based on MultiPlan's provider contracts.  *See Dando v. Bimbo Food Bakeries Distrib., LLC*, 2017 WL 1362022, at *3 (D.N.J. Apr. 10, 2017) (applying economic loss doctrine to tortious interference where claim is no more than a "contract claim in tort claim clothing"), *reconsideration granted on different grounds*, 2017 WL 2861650 (D.N.J. July 5, 2017).

But as explained for their negligent misrepresentation claim, the Associations don't identify any promise on patient insurance cards, only that the cards have a MultiPlan logo, which the Associations allege their members assumed meant Cigna promised to pay their MultiPlan rates. Courts have specifically found that this allegation is not enough to allege a "clear and definite promise." *Atl. Neurosurgical*, 2022 WL 158658, at *7 (applying New Jersey law and dismissing promissory estoppel claim because "[e]ven if Multiplan's logo was included on Cigna's . . . insurance cards, this fact alone does not sufficiently aver that Cigna and United promised to compensate [plaintiff provider] at the Contract Rates."); *see also Malaker*, 163 N.J. Super. at 480 (finding that an "implied" promise of a loan of some indefinite amount was insufficient to support a promissory estoppel claim); *Tacoma Auto Mall, Inc. v. Nissan N.A., Inc.*, 169 Wash. App. 111, 128–29 (Ct. App. Wash. 2012) (recognizing there is no authority "for the proposition that an implied promise is sufficient to meet the first required element of a promissory estoppel claim").

The assumption that MultiPlan rates will always apply just because a member card has a MultiPlan logo also doesn't make sense. As explained above, Cigna's contract with MultiPlan permits Cigna to not use the MultiPlan rates—an important term given how high those rates may be, as Member Plaintiffs' experience shows—and courts have recognized that MultiPlan providers' contracts make this point clear as well. Association Plaintiffs' members can't plausibly allege reasonable reliance on an alleged promise by Cigna for something different than what their contracts say because they saw MultiPlan's logo on a patient's identification card. *See Facteon*, 2014 WL 6685380, at *7 (dismissing promissory estoppel claim where plaintiff "failed to allege any facts allowing for an inference that its reliance on any 'promise' by [defendant] was reasonable."); *Alexander*, 991 F. Supp. at 436; *Seattle-First,* 85 Wash. App. 1084.

36

       4.      The AMA's and WSMA's Claim for Violation of the Washington Consumer Protection Act (Count VII) Should Be Dismissed.

Finally, the AMA and WSMA's WCPA claim fails too.  To state a claim, the statute requires a plaintiff to plead, among other elements, (1) an unfair or deceptive act or practice that (2) impacts the public interest.  *Keodalah v. Allstate Ins. Co*., 194 Wash. 2d 339, 349–50 (Wash. 2019).  The AMA and WSMA have failed to allege either.

Whether a certain act or practice is "unfair or deceptive" is a question of law, and courts applying the WCPA have held that a plaintiff cannot state an "unfair or deceptive" act or practice without pleading that the conduct at issue in the lawsuit deceived a substantial portion of the public. *Kelley-Ross & Assocs., Inc. v. Express Scripts, Inc.*, 2022 WL 1908917, at *6 (W.D. Wash. June 3, 2022).  Similar to Association Plaintiffs here, the plaintiff in *Kelley-Ross* was a pharmacy group that alleged that the defendant pharmacy benefit manager ("PBM") acted "unfairly" because of "its practice of refusing to reimburse pharmacies at the contracted rate for generic specialty medications," which the pharmacy alleged impacted the amount its customers in the public would pay. *Id.*  The court held, however, that this allegation did "not allege any conduct that was directed at the public" because the PBM's "dealings with pharmacies and the contractual terms it agrees to in those relationships do not have deceptive capacity affecting the public in general." *Id.*; *see also Segal Co. (E. States), Inc. v. Amazon.Com*, 280 F. Supp. 2d 1229, 1233 (W.D. Wash. 2003) ("[T]he fact that defendant may have engaged in additional commercial dealings does not indicate that its activities have the potential to deceive a 'substantial portion' of the public.").  The same is true of the conduct that Association Plaintiffs challenge, which turns on MultiPlan's inter-related contracts with the Associations' member providers and Cigna; like in *Kelley-Ross*, Cigna's conduct is directed to the Associations' healthcare provider members, not the public.

Association Plaintiffs also fail to allege the conduct at issue impacts the public interest. Washington courts have been clear that this "element requires that there be a likelihood additional persons have been or will *be injured in the same fashion*." *Kelley-Ross*, 2022 WL 1908917, at *6; *Goodyear*, 86 Wash. App. at 744–45; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 790 (Wash. 1986) ("Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest.").

Again, *Kelley-Ross* is on point. There, the plaintiff pharmacy argued that the public interest was harmed because of "a lack of access to medication in vulnerable communities" which the court recognized was "a distinctly different injury than what Kelley-Ross has allegedly suffered— namely being under-reimbursed for medication." *Kelley-Ross*, 2022 WL 1908917, at *6. Here, Association Plaintiffs allege that their members were harmed by not being paid their MultiPlan rates, but they do not explain how their patients or members of the public have suffered injury at all, let alone that they suffered the same injury as the members of Associations Plaintiffs. Therefore, this element hasn't been met either, and the WCPA claim can be dismissed for this reason too.

Finally, because any injury to the public that Association Plaintiffs could allege would be premised on alleged harm to Cigna plan members relating to the administration of those members' ERISA benefit plans, like Plaintiffs allege here, the WCPA claim is preempted by ERISA. *See Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1008 (9th Cir. 1998) (holding that WCPA claims premised on "interference with an attainment of benefits are preempted by ERISA.").

## **CONCLUSION**

For the reasons discussed above, Cigna respectfully requests that the Court dismiss the Plaintiffs' amended complaint with prejudice.

Dated:  October 26, 2022         Respectfully submitted,

       */s/ Warren Haskel*
Joshua B. Simon (*pro hac vice*)
Warren Haskel (*pro hac vice*)
Richard Nicholson (*pro hac vice*)
Chelsea Cosillos (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
rnicholson@mwe.com
ccosillos@mwe.com
One Vanderbilt Avenue
New York, NY 10017
Telephone:    +1 212 547 5400
Facsimile:    +1 212 547 5444

Theodore J. Tucci (Federal Bar No. ct05249)
**ROBINSON & COLE LLP**
ttucci@rc.com
280 Trumbull Street
Hartford, CT 06103
Telephone:    +1 860 275 8210
Facsimile:    +1 860 275 8299

Gregory J. Bennici (Federal Bar No. ct29698)
**ROBINSON & COLE LLP**
gbennici@rc.com
1055 Washington Boulevard
Stamford, CT 06901
Telephone:    +1 203 462 7572
Facsimile:    +1 203 462 7599

*Attorneys for Defendants Cigna Corporation and*
*Cigna Health and Life Insurance Company*

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2022, I electronically filed the foregoing document using the Court's ECF system, which will send notice of the filing to counsel of record. A true and correct copy of the foregoing will also be served on Plaintiffs' counsel via email to:

Elizabeth K. Acee, Esq.
**BARCLAY DAMON LLP**
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511
Tel. (203) 672-2659
Fax (203) 654-3260
eacee@barclaydamon.com

Andrew N. Goldfarb, Esq.
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
Fax (202) 822-8106
agoldfarb@zuckerman.com

D. Brian Hufford, Esq.
Jason S. Cowart, Esq.
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
Fax (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Leslie Howard, Esq.
**COHEN HOWARD, LLP**
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
Tel. (732) 747-5202
lhoward@cohenhoward.com

*/s/ Warren Haskel*