## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN MEDICAL ASSOCIATION, MEDICAL SOCIETY OF NEW JERSEY, and WASHINGTON STATE MEDICAL ASSOCIATION, each in an associational capacity on behalf of its members, JILL STEWART, MARIA C. PLUMACHER and JORGE CARDONA (as Attorney-in-Fact and representative of Lady Montoya Marin), individually and on behalf of all others similarly situated, | Case No. 3:22-cv-00769-OAW<br><br><br><br>January 13, 2023 |
| Plaintiffs, | |
| v. | |
| CIGNA CORPORATION and CIGNA HEALTH AND LIFE INSURANCE COMPANY, | |
| Defendants. | |

## JOINT MOTION FOR DISCOVERY ORDER

The parties in the above-captioned action respectfully move this Court to enter the attached [PROPOSED] STIPULATION REGARDING (I) THE COLLECTION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION AND (II) TREATMENT OF DOCUMENTS AND INFORMATION WITHHELD ON PRIVILEGE AND OTHER GROUNDS. The Proposed Stipulation governs discovery procedures of documents, ESI, and any other materials and information produced by the parties. The agreements and procedures outlined in the Proposed Stipulation will clarify the parties' rights and obligations with respect to preserving, collecting, reviewing, and producing certain documents, including ESI, which will conserve judicial resources while promoting efficiencies moving forward.

Respectfully submitted,

DATED:  January 13, 2023

*/s/ Andrew N. Goldfarb*
Elizabeth K. Acee, Esq. (ct 20986)
**Barclay Damon LLP**
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511
Tel. (203) 672-2659
Fax (203) 654-3260
eacee@barclaydamon.com

D. Brian Hufford, Esq. (phv 23101) (*pro hac vice*)
Jason S. Cowart, Esq. (phv 23206) (*pro hac vice*)
**Zuckerman Spaeder LLP**
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
Fax (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Andrew N. Goldfarb, Esq. (phv 07743) (*pro hac vice*)
Almas Abdulla, Esq. (*pro hac vice*)
**Zuckerman Spaeder LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
Fax (202) 822-8106
agoldfarb@zuckerman.com
aabdulla@zuckerman.com

*Counsel for Plaintiffs and the Putative Class*

*/s/ Joshua B. Simon*
Joshua B. Simon (*pro hac vice*)
Warren Haskel (*pro hac vice*)
Richard Nicholson (*pro hac vice*)
Chelsea Cosillos (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
rnicholson@mwe.com
ccosillos@mwe.com
One Vanderbilt Avenue
New York, NY 10017

2

Telephone:     +1 212 547 5400
Facsimile:     +1 212 547 5444

Theodore J. Tucci (Federal Bar No. ct05249)
**ROBINSON & COLE LLP**
ttucci@rc.com
280 Trumbull Street
Hartford, CT 06103
Telephone:     +1 860 275 8210
Facsimile:     +1 860 275 8299

Gregory J. Bennici (Federal Bar No. ct29698)
**ROBINSON & COLE LLP**
gbennici@rc.com
1055 Washington Boulevard
Stamford, CT 06901
Telephone:     +1 203 462 7572
Facsimile:     +1 203 462 7599

*Attorneys for Defendants Cigna Corporation and
Cigna Health and Life Insurance Company*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN MEDICAL ASSOCIATION, MEDICAL SOCIETY OF NEW JERSEY, and WASHINGTON STATE MEDICAL ASSOCIATION, each in an associational capacity on behalf of its members, JILL STEWART, MARIA C. PLUMACHER and JORGE CARDONA (as Attorney-in-Fact and representative of Lady Montoya Marin), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. 3:22-cv-00769-OAW |

**[PROPOSED] STIPULATION REGARDING (I) THE COLLECTION
AND PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION AND (II)
TREATMENT OF DOCUMENTS AND INFORMATION WITHHELD
ON PRIVILEGE AND OTHER GROUNDS**

Plaintiffs American Medical Association, Medical Society of New Jersey, and Washington State Medical Association, all in an associational capacity on behalf of their members in New Jersey and Washington State, and as representatives of the Litigation Center of the American Medical Association and State Medical Societies, and Jill Stewart, Maria C. Plumacher, and Jorge Cardona as Attorney-in-Fact and representative of his mother, Lady Montoya Marin, individually and on behalf of all others similarly situated, and Defendants Cigna Corporation and Cigna Health and Life Insurance Company (individually, a "Party" and collectively, the "Parties") stipulate regarding the production of documents and electronically stored information ("ESI") (documents

1

and ESI are collectively referred to herein as "Documents" unless otherwise noted and are defined below) as follows in the above-captioned case (the "Action").

I.   **GENERAL TERMS**

A.   <u>Application</u>.   The procedures set forth in this Stipulation shall govern the production of Documents (as those terms are used in the Federal Rules of Civil Procedure, including Rule 34(a)) relevant to this Action.   In the event that any Party identifies a particular source of responsive Documents or ESI for which application of this Stipulation would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify other Parties, and the Parties may meet and confer concerning the source.

B.   <u>Scope of Discovery</u>.   This Stipulation does not affect the proper subject matter of discovery in this Action.   Nor does this Stipulation imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

C.   <u>Preservation of Data</u>.   This Stipulation does not alter or expand the preservation obligations of any Party.

D.   <u>Privileges</u>.   Nothing in this Stipulation shall be interpreted to require the disclosure of Documents or ESI that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

E.   <u>Legibility</u>.   The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible.   If a copy is not legible (i) and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within five (5) business days of a request from a receiving Party, or as mutually agreed upon by the Parties but (ii) if no legible copy can be made, then the original will be made available for

inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

F.     <u>Modification and Amendment</u>.  Subject to entry by the Court, this Stipulation may be modified or amended by written agreement of the Parties.

G.     <u>Reservation of Rights</u>.  The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the District of Connecticut, and applicable Judicial Practice Standards.

H.     <u>Definitions</u>.

1.     "Document" or "electronically stored information" or "ESI" as used herein, is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).

2.     "ESI" means and refers to information created, manipulated, communicated, stored (on-site and/or off-site), and best utilized in electronic, digital, and/or native form, including, without limitation, the following: e-mail; word processing documents; spreadsheets; presentation documents; graphics; animations; images; audio, video, and audiovisual recordings; voicemail; text messages; and the like (including attachments to any of the foregoing), stored on databases, networks, computers, computer systems, servers, archives, backup or data recovery systems, removable media, the internet, handheld wireless devices, smart phones, and/or other storage media, requiring the use of computer hardware and software.

3.     "Metadata" is defined as (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other

information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

4.      "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.

5.      "Technology Assisted Review" or "TAR" means generally the process whereby software scores and ranks (or presents) documents based on their likely responsiveness, and human reviewers review for responsiveness the documents prioritized (or presented) by the process.

6.      "TAR Software" means the software a Party elects to use to perform the TAR.

## II.      COLLECTION OF DOCUMENTS AND ESI

A.      <u>Custodians</u>.  Within (30) days of (1) Entry of this Order; (2) receipt of a written discovery request from another Party after entry of this Order; or (3) from Entry of an Order consistent with this Stipulation, the responding Party shall identify a reasonable subset of ESI custodians, if any, that are likely to have ESI responsive to those written discovery requests. Prior to the production of ESI, each Party shall provide to all other Parties a list of ESI custodians from whom ESI will be collected and a good-faith explanation describing how the reasonable subset of ESI custodians was determined. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and to meet and confer regarding such request. Following agreement on a list of Custodians, each Party will begin collecting potentially responsive documents, ESI, and information in the possession, custody, or control of each Custodian (the "Collected Documents").

B.      Sources.   The Parties shall take reasonable efforts to identify and collect any Documents and ESI potentially relevant to this Action from all sources of potentially responsive, non-duplicative information, including, but not limited to, servers, network drives, and shared drives, that are within the Parties' possession, custody, or control.

C.      Collection of ESI.  The Parties shall use best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

## III.      SEARCH OF ESI AND TECHNOLOGY-ASSISTED REVIEW

A.      Collection of ESI.  In responding to discovery requests, a reasonable inquiry must be made. The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken and the conclusions drawn therefrom are reasonable under the circumstances. As part of this inquiry, the producing Parties may use TAR or keyword searching to help them to identify responsive ESI. If any Party chooses to use TAR or keyword searching to identify potentially responsive ESI, that Party shall offer to meet and confer with regard to a TAR protocol or search terms to be used and the sources of ESI to be searched. If the Parties cannot agree to a TAR protocol or keywords to be used or sources of ESI to be searched, and are unable to resolve any disputes, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation (to the extent it is dependent on resolution of such TAR protocol or keywords) will be stayed.

B.      Cooperation. The Parties agree to meet and confer in good faith over any disputes that might arise with respect to the use of TAR or search terms.

## IV.      PRODUCTION OF HARD-COPY DOCUMENTS

A.      File Type.  The Parties shall produce hard copy documents as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated

document-level text files, image load files (OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by Section IV(C).  The TIFF image must convey the same information as if the Document were produced in paper.

      B.   <u>Extracted Text and OCR</u>.  For documents that do not contain redactions, the producing Party will produce an extracted text file for each electronic document where text can be extracted, and an Optical Character Recognition ("OCR") text file for 1) each imaged paper document, and 2) each electronic document for which text cannot be extracted.  For documents that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such documents.  Said extracted text and OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF files ([producing Party's Name]-000000001.tif and [producing Party's Name]-000000001.txt).  The Parties shall agree to discuss a list of file types, not containing extracted text and for which OCR text will be provided by the producing Party at the time of production.  The Parties recognize that agreeing to a specific list now is premature as the Parties first need to understand which file types might be relevant.

      C.   <u>Color Copies</u>.  A receiving Party may request that specific Documents be produced in color for good cause.

      D.   <u>Family Groups</u>.  The Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

      E.   <u>Scan Size</u>.  Reasonable efforts will be used to scan Documents at or near their original size, so that the print or image on the Document appears straight, and not skewed.  Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text.  Physically oversized originals will appear reduced.  A

producing Party reserves the right to determine whether to produce oversized Documents in their original size.  A receiving Party may request that specific oversized Documents be produced in their original size for good cause.

F.   Notes and Attachments.  If any original Document has notes or attachments affixed thereto, the Parties will produce copies of those Documents with the accompanying notes and attachments unless the note or attachment itself is determined to be privileged or exceptioned (*i.e.*, the attachment is corrupted or a Non-Convertible File-type as set forth in Section V.E) during processing.

## V.   **PRODUCTION OF ESI**

A.   File Type.  Except as specified in Section V(C) below, the Parties shall produce ESI as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by Section V(B).

B.   Metadata.  For each item of ESI, if applicable, the Parties shall identify the following metadata:

- author/from

- recipient/to

- persons to whom the ESI was copied/CC

- persons to whom the ESI was blind copied/BCC

- the native application date on which the ESI was created

- the date the ESI was last modified

- the subject line

- the file name

- the file extension (e.g., pdf, doc, ppt, etc.)

- date sent

- date received

- beginning bates

- ending bates

- beg attach

- end attach

- page count

- MD5/SHA value

- All Custodians

- Filepath

- NativeFileLink

- the custodian(s) from whom the ESI was obtained

The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified above for production. The Parties are not obligated to populate manually any of these fields if such fields cannot be extracted from the ESI. Nothing in this paragraph shall be construed to obligate a party to (i) create new Metadata that is not already in existence at the time of collection of the ESI (except for the populating of the All Custodians field as discussed below), (ii) produce Metadata that is privileged or attorney work product (although such withheld metadata must be included in privilege log), or (iii) produce Metadata that is protected from disclosure by statute or regulation.

C.      Native Files.  Microsoft Excel files shall be produced as Native Files.  Tiff images should also be produced for all PowerPoint or presentation files.  For Excel and other spreadsheet files, the Parties agree to produce a single slipsheet for each Excel file branded with the text "File Produced In Native Format" along with the corresponding Filename, Bates number, and confidentiality designation.  A Party may request that another Party produce other ESI as Native Files for good cause.

D.      Production Format for Databases and Audio-Visual Files.  The Parties agree to meet and confer regarding the production format for Microsoft Access or other similar databases, as well as any audio visual or media files.

E.      Non-Convertible Files. Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.  Examples of file types that are not conducive to conversion into .TIFF or .TIF format include, but are not limited to: *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chn *.com. *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.bqx *. snd *.mpe *.wnw *.wma *.xfd *.db *.bat *.xnk *.qtl *. kob *.mso *. dat *.m4a *.bak*.xll *.blank *.wdf *.cdo *.snp *.rename *.mdi *.sda *.ren *.001 *.crf *.dtf *.eds *.exl *.dwg *.fdf *.pcl *.wmf *.wps *. fpage *.odttf *.cas *.ldl *.wm *.m4p *.dex *.3g2 *.sss *.xyz. The parties agree to meet and confer regarding a reasonable format for production of any such files to the extent necessary.

F.      Voice Mail.  The Parties agree that voice mail need not be produced unless it is maintained and stored in a digital, searchable format and is under the control of the Parties.  If the

parties are aware of responsive voice mail which is under the control of the Parties which is not stored in a digital, searchable format the parties shall meet and confer with respect to its production.

G.     <u>Color</u>.  A receiving Party may request that specific ESI be produced in color for good cause.

H.     <u>De-duplication</u>.  A party is only required to produce a single copy of a responsive document and shall deduplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians.  De-duplication of emails shall occur at the family level, such that documents that are attachments to a non-duplicative email shall not be eliminated as duplicates of responsive ESI. In addition, hard copy documents shall not be eliminated as duplicates of responsive ESI.  In addition, if deduplication is performed, the identity of the other custodians of deduplicated items must be listed in the "All Custodians" metadata field of the copy of the single record that is produced.

I.     <u>Attachments</u>.  If any original ESI has attachments, the Parties will produce copies of that ESI with the attachments—even if copies of attachments have been produced as part of a different family group—unless the attachment itself is determined to be privileged or exceptioned (*i.e.*, the attachment is corrupted or a Non-Convertible File-type as set forth in Section V.E) during processing.

J.     <u>Preservation of Native Files</u>.  When ESI is produced, the producing Party will maintain a separate file as a Native File and, in that separate file, it will not modify the Native File in a manner that materially changes the File and the Metadata.

K.     <u>Encryption</u>.: The producing Party shall encrypt all Production Data.  Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI.  Encryption should be applied using BitLocker or a comparable software or via hardware

encryption using hardware encrypted drives.  The producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

L.     _Chain of Custody_. The producing Party shall ship encrypted media and/or data electronically via FTP transfer (or the like), or physically via deliver service (e.g., FedEx and UPS) and provide tracking number for all shipments to ensure proper chain of custody.

M.     _Archived Materials_. Absent a showing by the requesting Party of circumstances whereby the need for such ESI substantially outweighs the burden associated with recovering it and that no other source for such ESI is otherwise available, the Parties shall not be required to search Back-Up Tapes and Data or other Back-Up, archived, or disaster recovery systems.  To the extent either Party determines that responsive information is only contained on Back-Up Tapes and Data, the parties will meet and confer in good faith to exchange information about the Back-Up Tapes and Data in their possession, when such Back-Up Tapes and Data were created (and/or most recently re-written), and what potentially relevant information they contain. For purposes of this Section, "Back-Up Tapes and Data" means data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

N.     _Preservation Not Required for Not Reasonably Accessible ESI_.  The Parties agree that the Parties need not preserve, search for, or produce (a) deleted computer files, whether fragmented or whole, (b) temporary or cache files, including internet history, web browser cache and cookie files, and (c) server, system, or network logs.

## VI.     BATES LABELING / CONFIDENTIALITY DESIGNATIONS

A.     Labeling.  Each page of all images produced (whether Documents or ESI) must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image.  Reasonable steps shall be taken to place the Bates number at a location that does not obscure any information from the source document.  In addition, to the extent any image or file is to be marked confidential, each page of the image or file to be marked confidential shall include the appropriate confidentiality designation as determined in the Agreed Protective Order, dated November 16, 2022 separately entered into by the Parties.  There shall be no other legend or stamp placed on the document image, with the exception of redacted information due to claims of applicable privileges.

B.     Consecutive Numbering.  The Parties agree that a convention on Bates number ordering will help the Parties better organize production of Documents and ESI in this Action.  Therefore, to the extent possible, Documents and ESI shall be Bates-numbered consecutively by custodian (source), maintaining all parent-child relationships.  Document numbers for documents produced by the Parties shall identify the Party's name and shall be in the format "Party Name-00000001."

C.     File Names.  Image file names must be unique and must correspond with the Bates number imprinted on the image.  For example, if the Bates number "B0000001" was imprinted, the image would bear the name "B0000001.tif."

D.     Authenticity.  No Party shall object that Documents or ESI produced pursuant to this Stipulation is not authentic based upon the file naming convention described in Section V(C), above.  The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI, including the inherent unreliability of metadata.

E.      Native Files.  If Native Files are produced, the Party producing such Native File shall include a single-image placeholder TIFF with a single Bates number on the image itself.  As stated above, the slipsheet for each native Excel file will include the text "File Produced In Native Format" along with the corresponding File name, Bates number, and confidentiality designation.  The Native File shall not be renamed, but rather will be linked to the placeholder TIFF and the Bates number assigned thereto.  There shall be no Bates numbering of Native Files at the page level.

## VII.    PRIVILEGE AND REDACTIONS

A.      Privilege Log.  The Parties agree that the following categories of Documents and ESI need not be identified on a privilege log: (i) all communications and attorney work product exchanged between counsel (including in-house counsel and counsel of record in this Action) and their respective clients since June 10, 2022; and (ii) all communications between an in-house attorney or counsel of record and their respective clients concerning scheduling, logistical, and/or other non-substantive or ministerial matters.

B.      In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing Party will provide a log or logs by no later than twenty-one (21) days after the date agreed upon by the Parties for completion of document production containing the following information:

1.      the beginning and ending Bates number of the document, if applicable,

2.      identify the nature of the privilege (including work product) which is being claimed;

3.      the type of document, e.g., letter or memorandum;

4.      the general subject matter of the document;

5.      the date of the document; and

6.      the author of the document, the addressees of the document, and any other recipients; and,

7.      where not apparent, the relationship of the author, addressees, and recipients to each other when necessary to evaluate the claim of privilege (e.g., identifying the attorney when the attorney-client privilege is claimed).

If the requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for it seeks which this information. Within fourteen (14) days of such a request, the producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer within three (3) business days to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

C.      <u>Group Privilege Entries</u>:  Further, the Parties recognize that there may be a limited number of instances where there are categories or groups of Documents or ESI in which all items are privileged and that, because of the large number of individual items in such a category or group, it would be a great burden to separately identify on a privilege log each individual Document or item of ESI included in that group.  The Parties agree that in such instances, which are intended to occur only in narrow circumstances, in accordance with THE SEDONA PRINCIPLES: BEST PRACTICES RECOMMENDATIONS & PRINCIPLES FOR ADDRESSING ELECTRONIC DOCUMENT PRODUCTION, comment 3(d) of 2018 ed.and as appropriate, instead of separately identifying each Document or item of ESI on its privilege log, it may instead identify categories

or groups of privileged Documents or privileged ESI.  In so doing, the Party shall describe in its privilege log the category or group of privileged Documents or ESI (including, without limitation, the criteria and method of delimiting the category or group), the factual basis for a reasonable belief that all Documents or ESI in the category or group are privileged, and the legal basis for the assertion of a privilege as to all Documents or ESI in the category or group.  Additionally, if a Party requests further information relating to a category or group identified on another Party's privilege log, such information shall be provided so that the requesting Party has sufficient information to determine whether or not to challenge the privilege claim.  The ultimate adjudication of challenged privilege claims shall be made on the basis of a document-by-document review.

      D.    <u>Redactions</u>.  If the producing Party is redacting information from a page, the producing Party shall electronically "burn" the word "Redacted" onto the page at or reasonably near to the location of the redaction(s).

      E.    <u>Native Files</u>.  Recognizing that Native Files cannot be redacted, producing Parties shall undertake reasonable efforts to produce documents in redacted form consistent with the principles contained in this Stipulation.

      F.    <u>Clawback</u>.  The inadvertent disclosure to another Party of any document which is subject to a legitimate claim that the document should have been withheld from disclosure as a privileged attorney/client communication or attorney work product shall not constitute a waiver of any privilege or otherwise affect the right to withhold it from production as privileged or work product.  If a request is made in good faith to return any such allegedly privileged or work product document that was inadvertently disclosed, the Party that received the document shall delete it and return all hard copies of it within three (3) days of the request.  The privilege or work product

status of such document or information, if any, shall be deemed to be restored upon the making of such request, provided, however: (1) nothing herein shall preclude the non-producing party from requesting the Court to determine whether the document or information is privileged or work product.  In the event the non-producing party intends to challenge the claim of privilege or work product, the non-producing party may retain a copy of such document for such purposes; (2) if the producing party either (i) expresses the intent to use such document or information at a hearing, deposition, or trial, or (ii) uses such document or information at a hearing, deposition, or trial, the producing party's right to request a return of such document or information shall be foreclosed.

*   *   *

Respectfully submitted,

DATED: January 13, 2023

*/s/ Andrew N. Goldfarb*
Elizabeth K. Acee, Esq. (ct 20986)
**BARCLAY DAMON LLP**
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511
Tel. (203) 672-2659
Fax (203) 654-3260
eacee@barclaydamon.com

D. Brian Hufford, Esq. (phv 23101) (*pro hac vice*)
Jason S. Cowart, Esq. (phv 23206) (*pro hac vice*)
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
Fax (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Andrew N. Goldfarb, Esq. (phv 07743) (*pro hac vice*)
Almas Abdulla, Esq. (*pro hac vice*)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
Fax (202) 822-8106
agoldfarb@zuckerman.com
aabdulla@zuckerman.com

*Counsel for Plaintiffs and the Putative Class*

*/s/ Joshua B. Simon*
Joshua B. Simon (*pro hac vice*)
Warren Haskel (*pro hac vice*)
Richard Nicholson (*pro hac vice*)
Chelsea Cosillos (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
rnicholson@mwe.com
ccosillos@mwe.com
One Vanderbilt Avenue
New York, NY 10017

17

Telephone:    +1 212 547 5400
Facsimile:    +1 212 547 5444

Theodore J. Tucci (Federal Bar No. ct05249)
**ROBINSON & COLE LLP**
ttucci@rc.com
280 Trumbull Street
Hartford, CT 06103
Telephone:    +1 860 275 8210
Facsimile:    +1 860 275 8299

Gregory J. Bennici (Federal Bar No. ct29698)
**ROBINSON & COLE LLP**
gbennici@rc.com
1055 Washington Boulevard
Stamford, CT 06901
Telephone:    +1 203 462 7572
Facsimile:    +1 203 462 7599

*Attorneys for Defendants Cigna Corporation and
Cigna Health and Life Insurance Company*


SO ORDERED this ___ day of January 2023


_____
Omar A. Williams
United States District Judge