# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN MEDICAL ASSOCIATION, MEDICAL SOCIETY OF NEW JERSEY, and WASHINGTON STATE MEDICAL ASSOCIATION, each in an associational capacity on behalf of its members, JILL STEWART, MARIA C. PLUMACHER, and JORGE CARDONA (as Attorney-in-Fact and representative of Lady Montoya Marin), individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CIGNA CORPORATION and CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br> Defendants. | Case No.:  3:22-cv-00769-OAW <br><br> February 3, 2023 |

**CIGNA'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page(s)

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** ................................................................................................................................ 1

    I.    THE MOTION'S EXHIBITS ARE PROPERLY CONSIDERED BY THE COURT. ...................................................................................................................... 1

    II.    THE ERISA CLAIMS (COUNTS I-III) SHOULD BE DISMISSED. ................... 2

        A.    Member Plaintiffs' ERISA § 502(a)(1)(B) Benefits Claim Fails. ............... 2

        B.    Member Plaintiffs' Alternative Claims for Breach of Fiduciary Duty Also Fail. .......................................................................................... 4

    III.    THE STATE LAW CLAIMS (COUNTS IV-VII) SHOULD BE DISMISSED. ................................................................................................................. 5

        A.    Association Plaintiffs Lack Article III Standing. ......................................... 5

        B.    The State Law Claims Should Be Dismissed for Failure To State a Claim. ............................................................................................................ 7

            1.    The Negligent Misrepresentation Claim (Count IV) Should Be Dismissed. ................................................................................. 7

            2.    The Tortious Interference Claim (Count V) Should Be Dismissed. ........................................................................................ 8

            3.    The Promissory Estoppel Claim (Count VI) Should Be Dismissed. ........................................................................................ 9

            4.    The Washington CPA Claim (Count VII) Should Be Dismissed. ...................................................................................... 10

**CONCLUSION** ......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page(s)**

*Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*,
  2023 WL 160084 (S.D.N.Y. Jan. 11, 2023) ...................................................................... 7, 9

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ....................................................................................... 6, 7

*Beach District Surgery Ctr. v. Cigna Health & Life Ins. Co.*,
  2:22-cv-03931-MCS-JPR, Dkt. 35 (C.D. Cal. Dec. 12, 2022) ...................................... 7

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ............................................................................................ 2

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
  572 F.3d 76 (2d Cir. 2009) .............................................................................................. 3

*Devlin v. Empire Blue Cross & Blue Shield*,
  274 F.3d 76 (2d Cir. 2001) .............................................................................................. 5

*Duffey v. Twentieth Century Fox Film Corp.*,
  14 F. Supp. 3d 120 (S.D.N.Y. 2014) .............................................................................. 2

*Fairfield Cnty. Med. Ass'n v. United Healthcare of New Eng.*,
  985 F. Supp. 2d 262 (D. Conn. 2013) ......................................................................... 5, 9

*Fay v. Oxford Health Plan*,
  287 F.3d 96 (2d Cir. 2002) .............................................................................................. 4

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) ............................................................................................ 9

*Hott v. MultiPlan, Inc.*,
  2023 WL 185495 (S.D.N.Y. Jan. 13, 2023) ................................................................ 7, 9

*Humana Ins. Co. v. Tenet Health Sys.*,
  2016 WL 5815907 (E.D. Cal. Oct. 4, 2016) ................................................................... 5

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*,
  936 F.2d 759 (2d Cir. 1991) ............................................................................................ 2

*Kelley-Ross & Assocs., Inc. v. Express Scripts, Inc.*,
  2022 WL 1908917 (W.D. Wash. June 3, 2022) ........................................................... 10

*Kosovan v. Omni Ins. Co.*,
  496 P.3d 347 (Wash. Ct. App. Div. 2 2021) ................................................................ 10

*Leach v. King*,
    2018 WL 1514243 (D. Conn. Mar. 27, 2018) ........................................................................2

*Lower E. Side People's Fed. Credit Union v. Trump*,
    289 F. Supp. 3d 568 (S.D.N.Y. 2018) ...................................................................................5

*N.J. Psych. Ass'n v. MCC Behav. Care, Inc.*,
    1997 WL 33446538 (D.N.J. Sept. 17, 1997) .........................................................................9

*N.Y. State Psychiatric Ass'n, Inc., v. UnitedHealth Grp.*,
    798 F.3d 125 (2d Cir. 2015) ...............................................................................................5, 6

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002) ..................................................................................................6

*Pagan v. NYNEX Pension Plan*,
    52 F.3d 438 (2d Cir. 1995) ....................................................................................................4

*Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*,
    2018 WL 2441768 (D.N.J. May 31, 2018) .......................................................................7, 8

*Roganti v. Metro. Life Ins. Co.*,
    786 F.3d 201 (2d Cir. 2015) ..................................................................................................5

*Schiff v. Liberty Mut. Fire Ins. Co.*,
    520 P.3d 1085 (Wash. Ct. App. Div. 1 2022) .....................................................................10

*Stolba v. Wells Fargo & Co.*,
    2011 WL 3444078 (D.N.J. Aug. 8, 2011) .............................................................................8

*Terbush v. Mitchell*,
    2017 WL 663198 (D. Conn. Feb. 17, 2017) .......................................................................10

*Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington*,
    194 N.J. 223 (2008) ...............................................................................................................9

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Tappan Zee Constructors, LLC*,
    2015 WL 8159377 (S.D.N.Y. Nov. 30, 2015) .......................................................................4

**Other Authorities**

Rule 12 ...........................................................................................................................................4, 9

Rule 12(b)(6) ......................................................................................................................................1

**PRELIMINARY STATEMENT**[1]

Member Plaintiffs' theory is that MultiPlan providers should be treated as in-network under their plans because of an "indirect" contract between providers, Cigna, and MultiPlan. But this is fundamentally wrong because the terms of Cigna's contract with MultiPlan make clear that: (1) MultiPlan providers are not in-network with Cigna; and (2) Cigna is not obligated to access the MultiPlan providers' rates for any particular claim. Member Plaintiffs admit they were unaware of these terms when they filed the Complaint, but now that they have seen them, their marquee argument opposing the Motion is that the Court should not consider the contract at the pleading stage. But the actual terms of the "indirect" contract at issue are clearly integral to Member Plaintiffs' claims, and foreclose their theory. Thus, the ERISA claims should be dismissed.

Association Plaintiffs' responses to the flaws in their state law claims (Counts IV-VII) are also unavailing. In addition to showing why individual participation is critical to their claims—and thus why Association Plaintiffs lack standing—Association Plaintiffs confirm they premise their claims on a theory about MultiPlan's logo on member insurance cards that courts around the country have repeatedly rejected. These claims should be dismissed here too.

**ARGUMENT**

**I.   THE MOTION'S EXHIBITS ARE PROPERLY CONSIDERED BY THE COURT.**

The Opposition challenges the Motion's exhibits because they are not specifically "quote[d]" in the Complaint, and Plaintiffs argue they go beyond plan documents. (Opp. 12-13.) But exhibits are properly included with a Rule 12(b)(6) motion when "integral to the complaint."

---

[1] The "Motion" or "Mot." refers to the memorandum of law in support of Cigna's motion to dismiss, ECF 49-1; and "Opp." refers to Plaintiffs' opposition, ECF 59. All other defined terms retain the meaning from the Motion, and unless otherwise noted, all emphasis is added, and internal quotation marks, alterations, and citations are omitted.

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  Cigna's exhibits meet this standard.

The Cigna-MultiPlan contract (ECF 49-3) goes to the heart of Member Plaintiffs' ERISA theory.  Member Plaintiffs allege that the Cigna-MultiPlan contract forms the link in an "indirect contractual arrangement" between Cigna and providers, and expressly reference and rely on this contract throughout the Complaint. (AC ¶¶ 5-7; ¶ 13; *see also* Opp. 14-15.)  While Plaintiffs may have not seen the Cigna-MultiPlan contract before (Opp. 1), they nonetheless allege what they think it means (AC ¶¶ 5-7), making it vital that the Court consider what the contract actually says. *Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 124 n.1 (S.D.N.Y. 2014).

Similarly, the Complaint references and relies on "communications" with members and providers (*e.g.*, AC ¶ 15), which would include the other exhibit Plaintiffs challenge—a screenshot of a Cigna webpage regarding when "the MultiPlan Savings Program logo appears on [members'] Cigna ID card" (ECF 49-7).  Plaintiffs cannot ignore this referenced communication "simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it . . . ." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991).

## II.   THE ERISA CLAIMS (COUNTS I-III) SHOULD BE DISMISSED.[2]

### A.   Member Plaintiffs' ERISA § 502(a)(1)(B) Benefits Claim Fails.

Cigna's Motion showed that neither Member Plaintiffs' plan language nor the Cigna-MultiPlan contract obligate Cigna to pay MultiPlan rates, and therefore Member Plaintiffs' claim fails. (Mot. 13-15.)  None of Member Plaintiffs' responses has merit.

---

[2] Member Plaintiffs do not contest they lack standing to seek equitable or prospective relief and Cigna Corporation is not a proper defendant (Mot. 18-19), conceding these points. *Leach v. King*, 2018 WL 1514243, at *4 n.1 (D. Conn. Mar. 27, 2018) (plaintiff "abandoned" claims due to failure to address defendant's arguments at dismissal stage).

First, Member Plaintiffs argue that their plan interpretation is plausible because providers that contract with MultiPlan have an "indirect contract" with Cigna, those "indirect contract[s]" make them "Participating Providers," so their MultiPlan rates should always apply. (Opp. 14-15.) But Member Plaintiffs' interpretation makes no sense if those same alleged "indirect contract[s]" show that they don't apply to Member Plaintiffs' claims. That's the case here, because the Cigna-MultiPlan contract states MultiPlan's providers are out-of-network and that Cigna has the right to not use the MultiPlan rate. (Mot. 7, 12-13 (quoting Cigna-MultiPlan contract §§ 1.1, 1.1.B.7).)

Undeterred, Member Plaintiffs argue that, on its face, the plans "require[d]" Cigna to pay the MultiPlan rates regardless of what the Cigna-MultiPlan contract says. (Opp. 14-15.) But the "Participating Provider" definition says nothing about what benefits the plan will cover or the rates that the plan must pay (Mot. 13-15), and nothing in that definition or elsewhere in the plans **requires** Cigna to apply any contract, including the MultiPlan one. (*See id*. at 8 (Stewart's plan).) Member Plaintiffs' reading is an attempt to "rewrite, under the guise of interpretation, a term of the contract" that is "clear and unambiguous" and should be rejected. *See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009).

Second, Member Plaintiffs argue that Cigna improperly relies on the Cigna-MultiPlan contract to supersede plan terms (Opp. 16-20), but it is Member Plaintiffs who rely on an "indirect" contract theory, and by extension the Cigna-MultiPlan contract, to interpret their plans. Member Plaintiffs cannot refer to a contract and then ask the Court to assume those terms favor their reading; they must explain how those terms fit their interpretation, which Member Plaintiffs cannot do. (Mot. 12-13.)

Third, Member Plaintiffs argue that Cigna's reading "provide[s] no reimbursement at all to Participating Providers because the benefits schedule does not use the term 'Participating

3

Provider.'" (Opp. 17.) This again incorrectly assumes that the "Participating Provider" definition ties to a provider's rates. Instead, as Cigna's Motion explained, the plans' benefits schedules specify the benefits and rates for services, and they use the terms "In-Network" or "Network" and "Out-of-Network" or "Non-Network." (*See* Mot. at 8-9, 13-14.) Contrary to Member Plaintiffs' narrow reading, Cigna's interpretation looks to the plan as a whole, as it must. *See Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002).

Fourth, Member Plaintiffs claim that when Cigna chooses to use the MultiPlan rate, it does so because it "recognizes" it has "indirect contracts" with providers—which, Plaintiffs assert, "is all the Plans' terms require to make them Participating Providers." (Opp. 18.) As set forth at length above, the Cigna-MultiPlan contract specifically disclaims this argument. (*See supra* at 2-3.)

Lastly, Member Plaintiffs challenge the reasonableness of Cigna's interpretation, a question that will ultimately turn on ERISA's deferential arbitrary and capricious standard of review given the plans delegate Cigna discretionary authority to interpret their terms. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441-42 (2d Cir. 1995). Member Plaintiffs miss the point: before they can get there, they must offer an interpretation of the plans that, as a matter of law, can survive Rule 12. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Tappan Zee Constructors, LLC*, 2015 WL 8159377, at *6 (S.D.N.Y. Nov. 30, 2015) (dismissing ERISA 502(a)(1)(B) claim where complaint did not offer plausible interpretation of plan document). For the reasons explained above, they cannot, so their ERISA claim should be dismissed.

**B.     Member Plaintiffs' Alternative Claims for Breach of Fiduciary Duty Also Fail.**

Plaintiffs' Opposition fails to show why Member Plaintiffs' breach of fiduciary duty claims survive Rule 12. First, Member Plaintiffs repeat their erroneous plan interpretation (Opp. 20), but that does not cure their failure to identify a plan breach or ERISA violation. (Mot. 16.) Second, Member Plaintiffs argue their Section 502(a)(1)(B) and 502(a)(3) claims are non-duplicative (Opp.

4

21), but the case law recognizes the opposite when, like here, the claims have the same theory and seek the same legal remedies.[3] (*See* AC ¶¶ 110-113, Wherefore Clause at 30-31.)

Third, Member Plaintiffs try to distinguish their fiduciary duty theory based on allegations about Cigna's "economic self-interest" and plan sponsors' desires. (Opp. 23.) These allegations are conclusory, and none conflicts with Cigna's duties to all plan participants (not just Member Plaintiffs) to maintain plan assets and manage costs. *See Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210-12 (2d Cir. 2015). Finally, Member Plaintiffs have no answer to the cases finding that "disgorgement of ill-gotten gains" and "restitution" can still be legal remedies; thus, they plead no independent equitable or declaratory relief. (*Compare* Opp. 22, *with* Mot. 18.)

## III. THE STATE LAW CLAIMS (COUNTS IV-VII) SHOULD BE DISMISSED.

### A. Association Plaintiffs Lack Article III Standing.

Cigna's Motion showed that Association Plaintiffs lack Article III standing for two reasons.

First, Association Plaintiffs seek only prospective declaratory and injunctive relief but do not allege that they face a threat of future harm. The Opposition argues that they can fill this gap by alleging "uncertainty" around how claims will be adjudicated in the future (Opp. 26), but "uncertainty" is not enough. *See Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 581 (S.D.N.Y. 2018) ("[I]t would be a strange thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact."). Association Plaintiffs' two cases say nothing different. *See Fairfield Cnty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 268 (D. Conn. 2013) (Article III met with evidence showing "specific, individual, tangible, and quantifiable harm," including future economic losses); *Humana Ins. Co. v. Tenet Health Sys.*,

---

[3] Member Plaintiffs rely on *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76 (2d Cir. 2001) and *N.Y. State Psychiatric Ass'n, Inc., v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015) to argue that they can maintain both "(a)(1) and (a)(3) claims at the pleading stage" (Opp. 23), but these cases merely hold that these claims ***may*** be distinct, if so pled. Here they are not, and dismissal is proper. (Mot. 16-17 (citing *Lines v. Hartford Fin. Servs. Grp., Inc.*, 2022 WL 408820, at *7 (D. Conn. Feb. 10, 2022)).)

5

2016 WL 5815907, at *3 (E.D. Cal. Oct. 4, 2016) (finding irreparable harm, not Article III standing, based on injury to goodwill, reputation, and certain business opportunities).

Second, Association Plaintiffs' claims would require significant individual participation of their members, including to prove key elements like reliance. (Mot. 23-27.) Association Plaintiffs try to distinguish Cigna's cases by arguing those plaintiffs sought money damages, but this misses the point: "***the substantive nature of the claim***" requires proof of reliance. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004).

The Opposition also cites to *N.Y. State Psychiatric* to argue that an association can bypass individual participation when seeking declaratory and injunctive relief to challenge "systemic policies and practices." 798 F.3d at 131. But *N.Y State Psychiatric* involved an ERISA challenge to allegedly standard mental health treatment limitations in health plans. *Id.*; *see also Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002) (same). Here, in contrast, the state law claims turn on the terms of ***each provider's*** agreements with MultiPlan that even Association Plaintiffs argue the Court cannot assume are the same. (*See* Opp. 32-33; *see also* AC ¶¶ 42, 65, 76.)

Association Plaintiffs try to sweep this problem under the rug by arguing that this case can be litigated with "a few examples." (Opp. 28.) But they cite no case holding that litigation-by-example can supplant the individual participation prong of the associational standing test where the claims of each association member can materially vary. (*See id.* (citing cases).) In fact, the Second Circuit has recognized the opposite. *See Bano*, 361 F.3d at 715-16.

Finally, Association Plaintiffs' attempt to limit their claim to injunctive and equitable relief, as opposed to money damages, creates impermissible conflicts between association members. (Mot. 26.) They respond that this is a fact issue (Opp. 29), but that proves Cigna's point,

6

because individual participation of association members would be required to decide the fact issue about whether "the form of the relief sought" creates a conflict.  *See Bano*, 361 F.3d at 715.

      **B.**      **The State Law Claims Should Be Dismissed for Failure To State a Claim.**

           1.      The Negligent Misrepresentation Claim (Count IV) Should Be Dismissed.

First, Cigna's Motion cited cases from multiple courts holding that a payor doesn't represent that it will pay a providers' MultiPlan rates simply by placing MultiPlan's logo on a member's insurance card. (Mot. 29-30.)  More courts have found the same since Cigna filed its opening brief.  *See* Ex. A, *Beach District Surgery Ctr. v. Cigna Health & Life Ins. Co.*, 2:22-cv-03931-MCS-JPR, Dkt. 35 at 3 (C.D. Cal. Dec. 12, 2022) ("the printing of the Multiplan logo on insureds' insurance cards" does not "constitute[] a representation that Defendant will pay claims . . . at Multiplan rates."); *Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, 2023 WL 160084, at *5 (S.D.N.Y. Jan. 11, 2023) (MultiPlan logo "does not sufficiently demonstrate that Cigna and United offered to pay . . . the contract amount."); *see also Hott v. MultiPlan, Inc.*, 2023 WL 185495, at *4 (S.D.N.Y. Jan. 13, 2023) (same).  Association Plaintiffs have no answer to this case law, nor do they cite a single case finding a MultiPlan logo—or any logo—can give rise to a negligent misrepresentation claim. (Opp. 29-31.)  Instead, they attempt to distinguish *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, 2018 WL 2441768 (D.N.J. May 31, 2018) by arguing that case did not involve allegations that Cigna paid some claims at the MultiPlan rates. (Opp. 30).  But "[a] history of paying the rate on some claims" does not equal a representation that Cigna will "always pay the Contract rate."  *Atl. Neurosurgical*, 2023 WL 160084, at *5.  At the end of the day, the logo signifies that Cigna and MultiPlan have a business relationship, nothing more.  *Compare id.*, *with* Opp. 31 n.10.

Second, Association Plaintiffs respond to the insufficiency of their negligence allegations by trying to manufacture a fact issue over the MultiPlan provider agreements. (*See* Opp. 32.)  But

Association Plaintiffs cannot skip to factual disputes about these agreements without first alleging sufficient facts that would establish negligence, and they point to none. (*See* Mot. 30-31.)

Third, Cigna's Motion cited case law holding that Association Plaintiffs could not have reasonably relied on MultiPlan's logo on members' benefit cards when they had separate contracts with MultiPlan that governed the terms of their payment. (*Id*. 31-32.) Association Plaintiffs do not attempt to distinguish these cases. (Opp. 33.) Instead, they argue, without authority, that "the logo communicated acceptance of their MultiPlan Contract" if they were sometimes paid the contract rates. This is not the law either. *See Stolba v. Wells Fargo & Co.*, 2011 WL 3444078, at *5 (D.N.J. Aug. 8, 2011) (reliance on conditional contract terms "is not reasonable").

Fourth, *Plastic Surgery* held the economic loss doctrine applies because "the agreements with Multiplan . . . form[] the basis of its negligent misrepresentation claim." 2018 WL 2441768, at *7–8. Association Plaintiffs argue *Plastic Surgery* is distinguishable because of a lack of a direct contract (Opp. 33-34), but that case analyzed the same facts as here, and disagreed.

      2.   The Tortious Interference Claim (Count V) Should Be Dismissed.

Association Plaintiffs have no response to why their tortious interference claim fails. First, the Opposition does not distinguish any of the case law holding that a plaintiff must plead the existence of an actual breach of contract or specific customers lost to state a tortious interference claim. (*Compare* Opp. 34-36, *with* Mot. 33-34 (citing cases).) This point is effectively conceded.

Second, Association Plaintiffs have no answer to the cases holding that a mere financial interest is enough to plead "wrongful means" for a tortious interference claim. Moreover, Cigna showed that "the allegations at the heart of the claim—Cigna's false statements on EOBs" (Opp. 34)—were not false. Association Plaintiffs themselves allege that the claims at issue were not adjudicated using the MultiPlan contract, but were repriced using another vendor called Zelis, which is what they allege the EOBs said. (*See, e.g.*, AC ¶ 69.) Thus, the EOBs were accurate.

8

Association Plaintiffs do not dispute this, and instead argue Cigna is not permitted to present an "alternate view of the facts" on a motion to dismiss. (Opp. 36.)  But dismissal is appropriate when "attenuated allegations . . . are contradicted . . . by more specific allegations in the Complaint . . . ."  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995).

<u>Third</u>, Association Plaintiffs allege they have been injured because Cigna's EOBs make it "harder" for the provider to balance bill a patient (Opp. 36), but they do not plead a single instance where this actually happened.  Moreover, the one case Association Plaintiffs cite where a court permitted a tortious interference claim to go forward based on a "disruption" theory involved the termination of provider contracts with an administrator, which is the kind of serious financial harm that the Complaint fails to allege here.  *See, e.g.*, *N.J. Psych. Ass'n v. MCC Behav. Care, Inc.*, 1997 WL 33446538, at *5 (D.N.J. Sept. 17, 1997); *see Fairfield Cnty. Med. Ass'n.*, 985 F. Supp. 2d at 271-72 (plaintiffs did not allege a tortious interference claim).

        3.        The Promissory Estoppel Claim (Count VI) Should Be Dismissed.

Cigna's Motion showed that Association Plaintiffs failed to plead a promissory estoppel claim because the MultiPlan logo on an insurance card is not a "clear and definite promise," which remains a required element of a promissory estoppel claim.  *See Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 194 N.J. 223, 253 (2008).  This is what the court in *Atl. Neurosurgical* held on identical allegations at the Rule 12 stage, which the Opposition does not even attempt to distinguish.  In fact, the same court recently dismissed the promissory estoppel claim again, even with allegations, like Association Plaintiffs make here, that Cigna paid some claims at the MultiPlan rates.  *See Atl. Neurosurgical*, 2023 WL 160084, at *6 (a logo and "course of dealing between the parties cannot alone maintain a claim for promissory estoppel without an accompanying unambiguous promise"); *Hott*, 2023 WL 185495, at *7 (same).

9

### 4. The Washington CPA Claim (Count VII) Should Be Dismissed.

Association Plaintiffs' Washington CPA claim also failed because the Complaint does not plead that Cigna's conduct was directed at the public or that Association Plaintiffs' claim impacts the public interest. Association Plaintiffs now contend they have pled a *per se* "[v]iolation of RCW 48.01.030," which obligates insurers to administer claims in good faith.[4] (Opp. 37-38.) While the Complaint does not plead this, and it may not be amended by the Opposition, *see Terbush v. Mitchell*, 2017 WL 663198, at *6 (D. Conn. Feb. 17, 2017), it does not matter. The case cited in the Opposition, *Kosovan v. Omni Insurance Co.*, 496 P.3d 347 (Wash. Ct. App. Div. 2 2021), concerned a claim brought by an **insured**, not a **provider**. This distinction is critical because "only an insured may bring a per se action for insurance-related violations of the CPA." *Schiff v. Liberty Mut. Fire Ins. Co.*, 520 P.3d 1085, 1092-93 (Wash. Ct. App. Div. 1 2022) (provider could not bring CPA claim based on *per se* violation of statute). Since Association Plaintiffs now admit their CPA claim is a *per se* violation of RCW 48.01.030, it should be dismissed. *See id*.

Next, Association Plaintiffs try to distinguish *Kelley-Ross & Associates, Inc. v. Express Scripts, Inc.*, 2022 WL 1908917 (W.D. Wash. June 3, 2022), but that case is on all fours. (Mot. 37-38.) Backpedaling, Association Plaintiffs point to EOBs (Opp. 38), but even if those allegations were well-pled (they aren't), a provider not being paid MultiPlan rates is different from the injury suffered by Cigna's members who received EOBs. *See Kelley-Ross*, 2022 WL 1908917, at *6 (plaintiffs must plead other "persons have been or will be injured in the same fashion").

### **CONCLUSION**

For all of the foregoing reasons, and additional reasons in Cigna's Motion, Cigna respectfully requests that the Court dismiss the Plaintiffs' amended complaint with prejudice.

---

[4] The RCW 48.01.030 theory also runs afoul of case law holding that a CPA claim is preempted by ERISA when it challenges administration of benefits, which the Opposition does not address. (*Compare* Mot. 38, *with* Opp. 38 n.16.)

Dated:  February 3, 2023 				Respectfully submitted,

  /s/ *Warren Haskel*
Joshua B. Simon (*pro hac vice*)
Warren Haskel (*pro hac vice*)
Richard Nicholson (*pro hac vice*)
Chelsea Cosillos (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
jsimon@mwe.com
whaskel@mwe.com
rnicholson@mwe.com
ccosillos@mwe.com
One Vanderbilt Avenue
New York, NY 10017
Telephone:	+1 212 547 5400
Facsimile:	+1 212 547 5444

Theodore J. Tucci (Federal Bar No. ct05249)
**ROBINSON & COLE LLP**
ttucci@rc.com
280 Trumbull Street
Hartford, CT 06103
Telephone:	+1 860 275 8210
Facsimile:	+1 860 275 8299

Gregory J. Bennici (Federal Bar No. ct29698)
**ROBINSON & COLE LLP**
gbennici@rc.com
1055 Washington Boulevard
Stamford, CT 06901
Telephone:	+1 203 462 7572
Facsimile:	+1 203 462 7599

*Attorneys for Defendants Cigna Corporation and Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I electronically filed the foregoing document using the Court's ECF system, which will send notice of the filing to counsel of record. A true and correct copy of the foregoing will also be served on Plaintiffs' counsel via email to:

Elizabeth K. Acee, Esq.
**BARCLAY DAMON LLP**
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511
Tel. (203) 672-2659
Fax (203) 654-3260
eacee@barclaydamon.com

D. Brian Hufford, Esq.
Jason S. Cowart, Esq.
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel. (212) 704-9660
Fax (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Andrew N. Goldfarb, Esq.
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
Fax (202) 822-8106
agoldfarb@zuckerman.com

Leslie Howard, Esq.
**COHEN HOWARD, LLP**
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
Tel. (732) 747-5202
lhoward@cohenhoward.com

　　　　　　　　　　　　　　　　　　　　 */s/ Warren Haskel*